John W. Dempsey *v.* John Dobson and James Dobson, trading as John & James Dobson, Appellants.

*Master and servant — Employer and employee — Inventions—Formula used in manufactures.*

If one employed by another experiments at the expense of his employer and for his use with a view to the immediate use of the results of such experiments in his employer's business, the recipes and formulæ resulting from such experiments belong to the employer so far as to give him the right to use the same.

A color mixer employed in a carpet factory was not an independent contractor, but his wages were adjusted according to his skill and experience. It was his duty to prepare the dyes or colors so as to reproduce in the car-

pet all the shades indicated by the design. After his work was approved by the designer, it was his duty to enter in a book called a " Color Book " the number of the carpet and the formula by which each shade of color used in its manufacture was produced. He was also required to keep a book in which a piece of yarn, colored according to the formula for each shade in the carpet, was preserved with the number of the carpet to which the shades belonged. When the colors were prepared they were put into large pitchers, each labeled with the formula or recipe it contained. *Held*, (1) that the recipes prepared by the color mixer for the use of his employers in the manufacture of their carpets belonged to them so far at least as to give them the right to continue the use of the various colors and shades produced by them; (2) that the mixer had a right if he chose so to do to preserve the recipes for his own use in the future, but his right was not an exclusive one as against his employers; (3) that if the color mixer did not keep the books which it was his duty to keep, but kept private books of his own in which he recorded the recipes, his employers had a right to a copy of their own recipes when he retired from their employment; (4) that in an action by the mixer to recover damages for the detention of his books, the value of the recipes in the books should not be considered in estimating his damages; (5) that the plaintiff's measure of damages was merely the detention of the books without regard to the recipes, and also proper compensation for any unnecessary violence in the manner of the detention of the books, or disregard for the sensibilities or the self respect of the plaintiff; (6) that in the instruction as to damages the jury should be told to consider the conduct of the plaintiff, his disregard of his duty in making no entries in his employers' color books, his failure to disclose this fact to them, and his leaving them under the honest belief that he was removing from their mill their own color books; (7) that a letter written after the plaintiff's color books had been returned to him demanding that the copy that had been made should be given up to him was inadmissible in evidence, inasmuch as it was an argumentative presentation of his view of his rights and a mere declaration of plaintiff in his own behalf.

Argued Jan. 27, 1896. Appeal, No. 202, July T., 1895, by defendants, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1892, No. 829, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Trespass for an alleged wrongful taking of color books. Before BIDDLE, J.

The facts appear by the charge of the court and by the opinion of the Supreme Court.

At the trial the court admitted under objection and exception the following letter:

"PHILADELPHIA, Sept. 26, 1892.

"MESSRS. JOHN & JAMES DOBSON.

"Gentlemen: On the 30th day of August your employees with the assistance of a policeman forcibly took from me books that were my private property, Mr. Watson, your special officer at the mill, stating that he took them by orders from Mr. James Dobson.

"In reply to a message sent you while detained against my will in the custody of your officer at the mill, you sent word that I should have the books in the morning if they belonged to me. My protests against this were unheeded.

"In a letter to me dated September 1st, you stated that you are having the books copied and that when finished, which would be in a few days, you would send them to my house. My objections to your possessing yourselves of my secrets and information availed nothing as up to yesterday you failed to return the books to me, which I have no reason to doubt you had copied as you stated you would.

"The books contain valuable trade secrets and information gained by me in a long course of years and are essential to me in the prosecution of my trade. While of great value to you in your business, you have no right to them nor in them whatever, as they are absolutely and unqualifiedly and unquestionably my private property, and you know it. I now demand that you surrender to me such copies as you have made of them or have caused others to make of them for you. At the same time I wish you to send to me the shade book which you neglected to return to me as promised.

"Respectfully,

JOHN W. DEMPSEY." (1)

The court charged as follows:

The complaint of the plaintiff in this case is that he at one time and for many years had been in the employ of Messrs. John & James Dobson, that for reasons of his own he gave notice that at a certain time he was about to leave their employment; that he had in his possession a certain number of books which are called color books, apparently, and another book which you see before you called the shade book, and the contents of those books were his private property; they did not belong to the defendants, John and James Dobson; [that he had himself

paid for the books; the entries there had been made by him, and a great number of them, one thousand eight hundred out of about two thousand three hundred, had been brought from England] [4] and a number of them had been of his own invention, and that he had been in the habit of taking these books every night to his home and bringing them back in the morning.

He complains that on a certain evening he, by direction of Mr. Dobson, was prevented from taking these books to his home, and in that time he put these books in a paper, sealed them up and left them there, and then, although unwillingly, went to his own home; the next day, however, these papers were opened by Mr. Dobson, and were given to a person to make copies of their contents for Mr. Dobson.—This requiring considerable time, I think about twenty-seven days or something of that sort, and at the end of the time the books were sent back to Mr. Dempsey. [For this he claims these damages at your hands. There is no doubt that this would constitute what the law calls a trespass, for which this suit is brought. The law does not regard the value of the thing, but the propriety and legality of the act.] [5] No matter how comparatively valueless these books were, if they belonged to the plaintiff, Mr. Dobson had no right to take and no right to keep them, and, if that was done without his consent, it would justify the plaintiff bringing suit.

[The answer of the defendants as to that part of the case is that these books did not belong in any proper sense to the plaintiff in this case; that undoubtedly he had them in his possession; that undoubtedly he made these entries in them, but that he was in the employ of the defendants at a salary which was entirely satisfactory to himself, whether large or small, I do not know. Mr. Dobson said he knew these books were being used, or supposed they were being used, for his business, and though they were purchased out of the plaintiff's money entirely unknown to him, he supposed that, like the other books in his establishment, they were paid for by him, and that after he received this notice of the plaintiff's intention to leave him his attention was called to a change taking place in regard to the removal of the labels which were on the pitchers used in Mr. Dobson's factory.] [2]

It seems that each one of these pitchers had a certain formula and number pasted to the neck of it, the pitcher being here yes-

terday and you saw exactly what it was.   He said he found the numbers were not being removed, but that the labels which gave the formula were being taken off.   Supposing this was some attempt to interfere with the workings of the establishment, he directed that the books, which he supposed were his own, should not be allowed to leave the premises, and in that way he justifies himself for having done what he did in this case.

[That is the first question for you to decide.   Of course, if they were not the plaintiff's books, but were the books of the firm, the plaintiff had no right at all to remove them, and therefore there would be no case whatever against the defendants. If, however, you take the other view of the case, that those were his books, even if they were not of the slightest value, he had a right to take them and to keep them.]   [3]

[The next question for you to consider will be the question of damages which are claimed in this case.   As I have just said to you, the law does not judge by value, but judges by intention. For example, if you shake your fist near enough to a man's face it is called an assault, and if you slap him on the back it is called a battery, and if you did that you would be guilty of assault and battery.   If you were sued for damages for that, of course you would not give as much as if the man had been knocked down and trampled upon.   Therefore in all these cases of trespass you must consider what injury the man has really sustained, and although you may say the law or the man's right ought to be vindicated, the question of the amount of damages for that would be of course a different question.]   [6]

There has been in this case no evidence whatever of the value of these formulæ; not of the market value, because it would probably be very difficult to show what that was, but there has been no attempt to show that any one of those 2300 formulæ was not known to the trade; there has been no attempt to show that any one of them would produce colors which could not be regularly produced in various ways.

Of course we can all understand that if you have a recipe or formula which will produce colors that no man in the country can produce you undoubtedly have a fortune, and if anybody were to take that away from you and use it you would be entitled to very high damages.   Of this there is no doubt.   But if that formula which you had was of very slight value, and

could be found in all the books which anybody in the trade could consult on the subject, it would be a subject of very much less damages than if it were of the character I have described.   [In the argument of counsel was put the case of a man having a scrap-book in which he had copied things from the Public Ledger.   If that were taken away from him improperly it would inconvenience him very much not to have these recipes that he copied from the Ledger, and he might claim damages on that account; but if he could show that those recipes were unknown in the world and would produce an effect which nobody else could produce, that of course would very much increase the damages.

So if a man comes and asks a very large amount of damages, those are questions of law which are proper for your consideration.   A man who has received a very slight injury ought not to receive large damages.] [7]   Of course, in this case, the books were returned.

This is all I have to say to you.

Verdict for plaintiff for $10,000 upon which judgment was entered for $5,000, a remittitur having been filed for all in excess of $5,000.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–7) various portions of charge; (10) the charge as a whole, quoting it.

*Richard P. White*, for appellants.—It was error to admit plaintiff's letter: Bush v. Ferry, 7 Phila. 195; Richards v. Franklin, 9 C. & P. 221; Holler v. Wiener, 15 Pa. 242; Fraley v. Bispham, 10 Pa. 320; Allen v. Peters, 4 Phila. 78; Fearing v. Kimball, 4 Allen, 125; Robeson v. Fitchburg, 7 Gray, 92; St. Louis, Alton etc. R. R. v. Thomas, 85 Ill. 464.

One who uses a book in his employer's business dedicates it to his service and loses his own right to its possession: Makepiece v. Jackson, 4 Taunton, 770; Wood on Master and Servant, 2d ed. 202.

Even where an employee uses a patented invention of his own in his employer's business he cannot, when he leaves the employment, deprive the master of its use.   The law implies a license to use the invention until the patent expires: Herman v. Her-

man, 29 Fed. 92; Jenks v. Langdon Mills, 27 Fed. 622; Barry
v. Crane, 22 Fed. 396; Slemmer's App., 58 Pa. 155; McAleer
v. U. S., 137 U. S. 142.

The instructions in relation to the measure of damages were
not only inadequate but misleading : Pa. R. R. v. Berry, 68 Pa.
272.

Beyond compensation upon no principle of law or equity is
a jury permitted to go, unless in cases of gross oppression or
aggravation, when the jury may mulct in vindictive damages :
Rose v. Story, 1 Pa. 190 ; Pittsb. R. R. v. Lyon, 123 Pa. 140 ;
Herdic v. Young, 55 Pa. 176 ; Keil v. Chartiers, 131 Pa. 466 ;
Stephenson v. Brown, 147 Pa. 300.

*F. Carroll Brewster, Geo. W. Harkins* with him, for appellee.
—The letter was properly admitted : Fraley v. Bispham, 10
Pa. 320; Robinson v. R. R., 7 Gray, 92; Fearing v. Kimball,
4 Allen, 125 ; R. R. Co. v. Thomas, 85 Ill. 465 ; Bush v. Ferry,
7 Phila. 195 ; Fenno v. Weston, 31 Vt. 352; Dutton v. Wood-
man, 9 Cush. 255 ; Frame v. Coal Co., 97 Pa. 309 ; Cosgrove
v. Himmelrich, 54 Pa. 203 ; Holler v. Weiner, 15 Pa. 242 ; Roe
v. Day, 7 C. & P. 705 ; Richards v. Frankum, 9 C. & P. 221 ;
Allen v. Peters, 4 Phila. 78 ; Gaskill v. Skene, 68 E. C. L. R.
664 ; Draper v. Croste, 15 Meeson & Welsby, 166.

That the plaintiff had property in the recipes and formulas
is clearly shown in the following citations : Wood on Master &
Servant, sec. 131 : Fraser on Master & Servant, 75 ; Smith on
Master and Servant, 164; Robinson on Patents, sec. 414; Hap-
good v. Hewitt, 11 Bissell, 184; Robinson on Patents, sec. 414;
Sheppard v. Conquest, 17 Common Bench, 427 ; Tice v. Mfg.
Co., 11 Ill. App. 109 ; Green v. Barrel Co., 1 Mo. 202 ; Aga-
wam Co. v. Jordan, 7 Wall. 602 ; Collar Co. v. Van Dusen, 23
Wall. 564.

A manufacturing corporation which has employed a skilled
workman, for a stated compensation, to take charge of its works,
and to devote his time and services to devising and making
improvements in articles there manufactured, is not entitled to
a conveyance of patents obtained for inventions made by him
while so employed, in the absence of express agreement to that
effect : Dalzell v. Watch Co., 149 U. S. 315.

Where a thing converted is of peculiar and special value to

the owner, the market value is not the real measure of damages: Burton v. Lister, 3 Atk. 384; Macclesfield v. Davis, 3 Ves. & B. 16; Duke v. Cookson, 3 P. Wms. 389; Lowther v. Lowther, 13 Ves. 95; McGowin v. Remington, 12 Pa. 56; Suydam v. Jenkins, 3 Sandford, 614.

Where gross fraud, malice, or oppression appears, the jury are not bound to adhere to the strict line of compensation, but may, by a severer verdict, at once impose a punishment on the defendant and hold up an example to the community: Sedgwick on Damages, 554; McBride v. McLaughlin, 5 Watts, 376; Stickney v. Allen, 10 Gray, 352.

OPINION BY MR. JUSTICE WILLIAMS, March 2, 1896:

The defendants are extensively engaged in the manufacture of carpets. The value of their products in the market and the demand for them by purchasers depend largely upon the artistic character of the patterns or designs upon which they are made, and the harmony and general effect of the shades of color by which they are brought out. The designs are prepared by persons employed for that special purpose. When a new design has been made and adopted by the manufacturers, it is sent to the color room, which is in charge of a color mixer. The duty of the color mixer is to prepare the dyes or colors so as to reproduce in the carpet all the shades indicated by the design. He submits the results of his work to the designer. When approved, it becomes his duty to enter in a book kept for that purpose and called a "Color Book," the number of the carpet and the formula by which each shade of color used in its manufacture is produced. He is also required to keep a book in which a piece of yarn, colored according to the formula, for each shade in the carpet, is preserved, with the number of the carpet to which the shades belong. This is known as the "Shade Book." When the manufacture of this particular carpet is about to be begun, the color mixer prepares the colors for actual use. When mixed and ready for use, they are put into large pitchers and on each pitcher is put a label with the formula or recipe by which the color it contains was prepared, together with the number of the carpet upon which it is used; so that when a pitcher is emptied it can be refilled by any of the employees about the color room by following the recipe appearing

on the label. The designer and the color mixer, like the printer and the weaver, are employed, and their wages adjusted with reference to their skill and experience in the department of work to which they are assigned. They are not independent contractors producing designs or shades of color by a secret process of their own which they sell as patterns or colors to the manufacturer for a fixed price, but they are employees bringing their skill and experience, in the use of the materials furnished by their employer, into his service for his benefit in the production of his goods. The designs and recipes so made for him are, as between his employees and himself, his for the purposes of his own manufacturing business. Even if his employee had obtained letters patent for his formula protecting himself thereby against the public, still the employer's right to continue its use would be protected by the United States Courts : Solomons v. United States, 137 U. S. Rep. 342. The same conclusion was reached by this court in Slemmer's Appeal, 58 Pa. 155, where we said, "If one employed by another, whilst receiving wages experiments at the expense of his employer, constructs an invention and permits his employer to use it without compensation paid or demanded, and then obtains a patent, a license to the employer to use the patent will be presumed." But this case is much stronger than that of one who obtains a patent as in Slemmer's case, for here the experiments resulting in the recipes were not only made at the expense of the employer, but for him, and with a view to the immediate use of their results in his business. It was the sole and only purpose for which the color mixer was employed and paid. In the manufacture of carpets, the spinning of the yarn is no more a part of the process than is the preparation of the colors to be made use of in working out the pattern. The fact is that the spinner and the weaver, the color mixer and the printer who uses the colors, are all alike in their relation to their common employer. The labors of all are necessary to the production of a carpet and the results of the labor of all belong to the employer who pays for the labor. The recipes prepared by the color mixer, for the use of his employers in the manufacture of their carpets, belonged to them so far at least as to give them the right to continue the use of the various colors and shades produced by them. The plaintiff had a right if he chose so to do, to preserve them for his own

use in the future, but his right was not an exclusive one. It was his duty by virtue of his employment and by reason of the relation his work bore to his employer's business to enter all these recipes in his employer's color book; for none of the patterns of carpet manufactured during the twenty years of the plaintiff's service could be reproduced without the use of the same recipes, for the preparation of the colors to be employed, that had been used when the pattern was first produced. This duty, to put it in the mildest form, the plaintiff had improperly neglected. His employers were left under the belief that their color books had been used and that the books he was attempting to carry away were in every sense of the word their own property. Had this been true, their conduct in requiring him to leave them in the mill would have given the plaintiff no cause of action. In respect to this subject the mistake under which they labored was due to the plaintiff's failure in duty as an employee. He had pushed the blanks furnished to him to one side and had used only his own, and had left his employer in ignorance of his conduct. Now let it be conceded that the books he was attempting to carry away were his own; it is nevertheless true that they contained the only record of the recipes used in the mill for twenty years, and that these recipes were a part of the stock in trade of his employers. Not perhaps the particular copy of them which the plaintiff had entered in his own books, but the processes and combinations they represented belonged for the purposes of their business to them, and as between him and them they had a right to some record or register of recipes.

If the plaintiff had a right to recover in this action because of the ownership of the books in which the recipes had been entered and the manner of his detention, when he attempted to take them away, the jury should have been instructed that the value of the recipes was not to be considered in estimating the damages. As between these parties, as we have already said, the plaintiff had no exclusive right to them. It was his duty as a color mixer to enter each formula in his employer's books. They had a clear legal right to the knowledge which such a record would afford them, and the copies they have made from his books should have been made for them by the plaintiff as the several colors were compounded during his long term of

service. The plaintiff's claim for damages must rest on the fact that he owned the books that were kept from him. In addition to this, anything in the manner of the detention that shows unnecessary violence or disregard for the sensibilities or the self-respect of the plaintiff may be considered. But the jury should be told in this connection that they should also consider the conduct of the plaintiff—his disregard of his duty and his instructions in making no entries in his employer's color books—his failure to disclose this fact to them, and leaving them under the honest belief that he was removing from their mill their own color books. The portions of the charge embraced in the fifth, sixth and seventh assignments of error, if stated as abstract propositions would be unobjectionable, but as applicable to the facts of this case they were in the view we have taken of this case misleading. The plaintiff does not seem to have suffered any special inconvenience or injury because of the detention of his books and he has no right to complain that the defendants are now in possession of one list or register of their own recipes. They are entitled to such a register and it should have been made for them by the plaintiff. If he had discharged his whole duty as an employee, the misunderstanding which led to the detention of his books could not have occurred and this litigation would never have arisen. The first assigment must also be sustained. The letter written after the plaintiff's color books had been returned to him demanding that the copy that had been made should be given up to him was inadmissible. It was an argumentative presentation of his view of his rights as an employee and of the grievance of which he complained. It was unanswered. It was the declaration of the plaintiff in his own behalf and was no more admissible because reduced to writing than it would have been if delivered orally. The point is substantially ruled in Fraley v. Bispham, 10 Pa. 320.

The judgment is reversed for the reasons now given and a **venire** facias de novo awarded.