## John W. Dempsey, Appellant, *v.* John Dobson and James Dobson, trading as John & James Dobson.

*Master and servant—Custom—Evidence.*

A custom in the business of carpet making by which the results of a color mixer's skill and labor in the service of his employer is recognized as belonging exclusively to the color mixer, and by which the latter may at his pleasure carry off the recipes and color books from his employer's factory, and refuse to permit their further use except upon his own terms, is unreasonable and contrary to law.

Dempsey v. Dobson, 174 Pa. 122, followed.

Argued Jan. 19, 1898. Appeal, No. 330, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1892, No. 829, on judgment for defendants. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Trespass to recover damages for the alleged wrongful taking of plaintiff's color books. Before BEITLER, J.

The case was previously reported in 174 Pa. 122, where the facts sufficiently appear.

At the trial plaintiff testified in his own behalf as follows:

" Q. What is the nature of the business of a color mixer? A. Selecting and combining colors, coloring materials, either singly or in combination, for the purpose of producing colors for the printing of tapestry carpets, or yarns, or other fabrics. Q. When did you enter into the employment of the Messrs. Dobson? A. In 1873. Q. What were the terms of your employment? A. $20.00 a week, and $200 at the end of the year. Q. Was there any other condition or arrangement at that

time? A. None whatever. Q. Was it stated what it was desired you should do? A. To make colors for their carpets. Q. Was that the whole of your arrangement? A. Yes; but they said that as they were just commencing business, and if the business continued that they would gradually increase my salary. Q. Did they do it subsequently? A. Yes, sir. Q. During the time of your employment with them? A. Yes, sir. Q. To what was it increased? A. To $2,260 per annum. Q. Was that the amount you received when your employment terminated? A. Yes, sir. The year before I received $2,260. Q. Was there at any time any engagement or arrangement by and between you and your employers in reference to keeping a copy of your recipes or formulas in any book for them?"

Objected to by defendants' counsel.

Objection sustained. Exception for plaintiff. [1]

" Q. Was there at any time during your employment by the Messrs. Dobson from April, 1873, down to August 30, 1892, any modification in any way of the original contract with them excepting an increase of your salary? A. No, sir; none whatever. Q. What is the custom or usage of the trade, so far as the keeping of recipes or formulas in color books is concerned?"

Objected to by defendant's counsel.

Objection overruled. Exception for defendants.

"A. Color mixers and dyers keep color books for their private use. I do not think that any one of them in the United States —and I will state in England—I do not think that any color mixer in the United States or in England will give his books up, because they are his tools of the trade, and they guard them very secretly."

Lewis Longbottom, a witness for plaintiff, testified as follows:

By Mr. Harkins : " Q. What is your business? A. Color mixer. Q. How long have you been engaged in that business? A. Forty years. Q. Whereabouts have you been employed as a color mixer? A. John Crossley's, England. Q. Whereabouts in this country? A. At Sanford's. Q. Whereabouts here? A. Stinson Brothers, this city. Q. How long have you been engaged in their employment? A. Since 1881. Q. Are they engaged in the same business as the Messrs. John and James Dobson, the defendants in this case? A. Yes, sir. Q. Do you keep color books? A. Yes, sir."

Plaintiff offered to show by Mr. Longbottom, the witness on the stand, and other witnesses, that it is the usage and custom of the trade for color mixers to keep recipes and formulas, devised by them for the production of colors, and used in their employment, in color books kept by them, belonging to themselves, which are their special private property; and that it is a known usage and custom in the trade that they belong exclusively to the color mixer, and that the employer has no interest or title or property in them in any way; to be followed by the testimony of other color mixers.

Objected to by defendants' counsel.

Objection sustained. Exception for plaintiff. [2]

Judge BEITLER: I overrule your offer to prove by anybody or any number of people, the custom of the trade, other than what has been laid down by the Supreme Court in this particular case of this employment. You had better make a formal offer.

Plaintiff offered to prove by John Forrest, proprietor of the American Yarn Printing & Spinning Works of Philadelphia, that he is a manufacturer and engaged in the business of printing yarns and other woolen fabrics in colors, and that he has men in his employment for that purpose; and that it is the usage and custom of the trade for the color mixer to keep the recipes and formulas for the production of colors and shades of color, in books belonging to him and called color books; that these recipes and formulas are the exclusive private property of the color mixer, and the manufacturer and employer has no property interest or right in the same, except by the permission of the color mixer, or by purchase.

Objected to by defendants' counsel.

Objection sustained. Exception for plaintiff. [3]

The court charged in part as follows:

[This case has been partially settled by the Supreme Court. They decided that when Mr. Dempsey was employed by the Messrs. Dobson to mix colors for them and make experiments in their mill and on their time, and when he was paid by them for his labor, that the result reached by him was theirs as well as his; and, it seems to me, that is based on such a plain principle of common sense, that it must be right; that when a color

mixer produces one hundred and thirty shades to go into a car-
pet, as it has been testified here has been frequently the case,
and it becomes a standard pattern, and does this work on their
time and at their expense, that then, if he leaves their employ,
it naturally follows that his former employers will want to match
these shades. and, therefore, they should have the formula by
which they were made. The Supreme Court has settled that
question, however; they have settled that these books or recipes
contained in these books belonged to the Messrs. Dobson, while
the plaintiff had a right to make a memorandum or keep copies
or jot down in any way for his further use, such recipes; but,
by reason of the employment, they were not his exclusive prop-
erty. So when he was leaving he was taking with him certain
pieces of paper or books containing certain recipes that belonged
to the Messrs. Dobson; and when they said : " You cannot take
these books away, but you can go home and leave them here,"
they did not do anything more than the Supreme Court has
said they had a right to do. It was no more his right to have
an absolute control over them than it was theirs. There does
not appear to have been any violence done. He could have
gone home at any time during these four hours, during which
he stayed in the mill. If they had kept these books for any
unreasonable time, and he was obliged for that reason to give
up other employment,—if he could prove that,—that might
form a basis upon which a jury might award damages; but
they did not do that; they only kept these books twenty-seven
days until they could make copies of them, and there has been
nothing to show that he was damaged by that or on which he
could be given damages; and, therefore, I direct you to find a
verdict in this case for the defendants.] [4, 5]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the
bill of exceptions; (4, 5) above instructions, quoting them.

*F. Carroll Brewster* and *Geo. W. Harkins,* for appellant.—
Whether a usage exists is to be decided by a jury; if found that
it exists the court is to say whether it is within any of the rea-
sons which makes it bad : Newbold v. Wright, 4 Rawle, 219;
Pittsburg v. O'Neill, 1 Pa. 342; Carey v. Bright, 58 Pa. 82.

Where a custom exists parties are presumed to deal in view of it: Potts v. Aechternacht, 93 Pa. 141; Sewell v. Corp., 1 C. & P. 392; Union Ins. Co. v. American F. Ins. Co., 107 Cal. 327; Linsley v. Lovely, 26 Vt. 123; Van Hoesen v. Cameron, 54 Mich. 609; Branch v. Palmer, 65 Ga. 210; McCulsky v. Klosterman, 20 Oregon, 108; Lucas v. Bourman, 2 Eng. Com. Law Rep. 151; Pleasants v. Pendleton, 6 Rand. (Va.) 493; Foley v. Mason, 6 Md. 37; Walker v. Barron, 6 Minn. 508.

Infringement of absolute rights, like those of personal security and property, gives a cause of action without regard to the amount of harm done, or to there being harm estimable at any substantial sum at all: Pollock on Torts, 159; Addison on Torts (Wood's ed.), sec. 16; Rogers v. Fales, 5 Pa. 159; Hood v. Palm, 8 Pa. 239; McBride v. McLaughlin, 5 Watts, 377; Ry. Co. v. Lyon, 123 Pa. 150; Amer v. Longstreth, 10 Pa. 148; Nagle v. Mullison, 34 Pa. 54.

*Richard P. White*, for appellees.—A usage is never admissible to oppose or alter a general principle of law, and upon a fixed state of facts to make the legal rights or liabilities of the parties other than they are at common law: Barnard v. Kellogg, 10 Wallace, 383; Rapp v. Palmer, 3 Watts, 178; Bolton v. Colder, 1 Watts, 363; Makepeace v. Jackson, 4 Taunton, 770.

OPINION BY MR. JUSTICE WILLIAMS, February 21, 1898:

This case was in this Court in 1896, and is reported in 174, Pa. 122. A verdict and judgment had been obtained in the court below against the defendants from which they appealed. We reversed the judgment, holding that a color mixer could not assert as against his employer, an exclusive title to the various combinations and shades of color devised by him for use in the manufacture of carpets in his employers' mill. But we awarded a venire facias de novo because of an allegation that violence had been used by the defendants in the detention of the plaintiff, and in preventing him from carrying away from the mill his color books. A new trial has now been had. The charges of the use of unlawful violence do not seem to have been pressed, but the plaintiff attempted on the trial to prove a custom or usage prevailing in the business of carpet making, by which the results of the color mixer's skill and labor in the service of his

employer is recognized as belonging exclusively to the employee, the color mixer; the employer, the manufacturer, for whose use the colors were devised having no title whatever to them. The several assignments of error relate to the rejection of the evidence offered to establish such a custom. It is one of the requisites of a good custom that it must be reasonable. Another is, that it must not be contrary to law. The custom sought to be set up was an unreasonable one. The color mixer, like the designer and the weaver, is employed because of his supposed ability to serve his employer in the particular line of labor which he is expected to follow. First comes the work of the designer, who prepares, or invents, it may be, the pattern after which the carpet is to be made. Then comes the color mixer who is to mix his employers' colors, in such proportions as to produce the necessary shades required by the pattern that has been adopted. Finally comes the application of the colors and the weaving. The services of each and all these mechanics are requisite to the production of the carpet. The employer has an equal right to the faithful service of each, and is equally, so far as his own business is concerned, entitled to the results of the labor of each. If a color mixer could at his pleasure carry off the recipes and color books from his employers' factory and refuse to permit their further use except upon his own terms, it would be in his power to inflict enormous loss on the manufacturer at any moment, and not merely to disturb, but to destroy his business. Such a custom would not be reasonable and could not be sustained. But it is against the law. The courts of the United States, of this state and, so far as I have been able to examine, of all the states in the Union, recognize the rule laid down when this case was here in 1896, that " The designs and recipes so made for an employer are as between his employee and himself, his, for the purpose of his own manufacturing business. Even if his employee had obtained letters patent for his formula, protecting himself thereby against the public, still the employers' right to continue its use in his own business would be protected by the United States courts:" Solomons v. United States, 137 U. S. Reps. 342. To the same effect are Slemmer's Appeal, 58 Pa. 155; Dempsey v. Dobson, 174 Pa. 122. The several offers made for the purpose of showing the existence of the alleged customs were properly rejected. In the absence of proof of the

alleged acts of violence, we fully concur with the learned judge of the court below that there was nothing shown by the evidence on the part of the plaintiff sufficient to sustain a verdict against the defendants, and that the case was a proper one for a compulsory nonsuit.

The judgment is affirmed, and judgment is now entered in favor of the defendants.