# White Heat Products Co., Appellant, *v.* Thomas.

*Master and servant — Contract — Written contract — Doubtful terms—Oral evidence—Construction by parties—Patented articles —New inventions—"Earthenware products"—Equity.*

1. Where a corporation, organized "for the purpose of making and selling products from silica and other materials," and engaged exclusively in the manufacture of building material, makes a written agreement with an inventor, by which the latter enters into the employment of the company, under a covenant in the agreement, by which he binds himself to assign to the company certain patents, and to permit the use of another patent, "in so far as the same relates to the business of making bricks, stone products, earthenware products or analogous and collateral products," together with all his rights to any future invention which he may make relating to such products, during the period of his employment and one year thereafter, the company cannot claim a right to the assignment to it of a process to make a tool, such as an abrasive wheel, composed principally of bauxite clay and intended to be used for grinding iron, steel and other hard metals.

2. Such a construction of the agreement is applicable where it appears that the inventor was in the employment of the company for a year before the written agreement was signed, under an oral agreement substantially the same as the written one, and that before he executed the writing he especially stated to the company's manager that he was unwilling to make an agreement obligating himself to assign patents which did not pertain to the manufacture of bricks, wainscoting and articles entering into building construction.

3. Where the products of an inventive mind, is sought to be appropriated under an agreement to assign to another, the language of the agreement must be clear, and show an unmistakable intention that the particular matter covered by the invention or patent, is within the intention of the parties.

4. In order to aid in the construction and interpretation of such an agreement, and to give it effect according to the true intention and understanding of the parties, the court may consider evidence

tending to show the character of the products manufactured by the assignee at the date and previous to the agreement, and of the circumstances leading up to its execution, that it may have all the information necessary to correctly understand the language, terms and subject-matter of the contract, and place itself intellectually in the situation the parties were in at the time it was executed. Proof of this character is properly received, not to vary the writing, but to explain the meaning of doubtful terms.

5. The rule that an employee who perfects a new invention during the course of his employment and uses his employer's property, and the services of other employees, to do so, thereby gives to his employer an irrevocable license to use the invention, does not apply to a case where the invention was conceived, and the preliminary work done, outside of the employer's working hours and in a plant not connected with that of the employer, and, while the invention was subsequently perfected and manufactured in the employer's plant, the labor necessary to accomplish that result, was done under and subject to the completion of negotiations for a proper compensation to the employee, in the shape of a proportionate share of the profits from the sale of the patented article.

Argued February 9, 1920. Appeal, No. 97, Jan. T., 1920, by plaintiff, from decree of C. P. Chester Co., in Equity, No. 632, dismissing bill in equity in case of White Heat Products Co. v. Charles W. Thomas. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEP-HART, JJ. Affirmed.

Bill in equity for injunction. Before HAUSE, J.
The facts appear by the opinion of the Supreme Court.
The court dismissed the bill. Plaintiff appealed.

*Error assigned* was decree dismissing bill.

*Owen J. Roberts* and *William I. Schaffer,* with them *Isabel Darlington,* for appellant, cited: Blakely v. Sousa, 197 Pa. 305; Fisher v. Reading Realty Co., 38 Pa. Superior Ct. 458; Sherman v. Consolidated Dental Mfg. Co., 202 Pa. 446.

A. M. Holding, with him William L. Chrisman, for appellee, cited, among other cases: McAuley v. Chaplin-Fulton Mfg. Co., 217 Pa. 477, and Cortelyou's App., 102 Pa. 576.

OPINION BY MR. JUSTICE FRAZER, March 15, 1920:

Plaintiff, by its bill, seeks to compel defendant to disclose certain inventions and assign to plaintiff an application for a patent on such devices, pursuant to the terms of a written agreement between the parties. The case was heard before a referee who found the invention in question was within the terms of the contract and recommended a decree ordering execution of a proper assignment from defendant to plaintiff and awarding a perpetual injunction restraining defendant from disclosing to others information concerning the invention in question. Exceptions were filed to the report and, after argument, the court reversed the findings and conclusions of the referee, holding the contract was not intended by the parties to cover the device in controversy, and entered a decree dismissing the bill, from which order plaintiff appealed.

Plaintiff is a corporation organized "for the purpose of making and selling products from silica and other materials," and, at the time of executing the agreement in question, was engaged in the manufacture of bricks, for wainscoting and building or other structural purposes, from white silica rock mixed with glass as a binder. Defendant, an expert in matters of this character, entered into a contract with plaintiff, dated December 21, 1911, wherein, after reciting defendant's ownership of certain patents, in consideration of the sum of $1,000, and the employment of defendant by plaintiff at a salary of $125 per month and the payment of "twenty cents per thousand on all bricks made and considered merchantable by said stone works during the period of such employment," defendant assigned and transferred to plaintiff all his right, title and interest in specified patents and also the

exclusive right to make, use and sell the design under another patent relating to a furnace "in so far as the same relates to the business of making bricks, stone products, earthenware products or analogous and collateral products," together with his "entire right, title and interest in and to every invention, interest therein, or claim thereto relating to the manufacture of bricks, stone products, earthenware products and analogous and collateral products which he now has or may hereafter make or acquire during the period of his employment by said stone works and for one year after the termination thereof." For a period of two years and ten months defendant continued experiments in the manufacture of bricks and all patents secured by him during this time were assigned to plaintiff. In October, 1914, plaintiff's plant being idle at the time owing to its operations proving unsuccessful, defendant began of his own accord experimenting with a process for making an abrasive wheel to be used for grinding iron, steel and other hard metals. The experiments at first were conducted in a separate shop, not owned or controlled by plaintiff; a few months later, however, defendant discussed the matter with P. M. Sharpless, president of plaintiff company, with a view to their engaging in business together and it was agreed that experiments be continued at plaintiff's plant and at its expense. The experiments were successful and a number of wheels were manufactured as sample lots and put on the market. No agreement had as yet been reached concerning a division of profits resulting from the sale of the wheels, although there were numerous interviews and letters in which the subject was mentioned, in all of which the manufacture of abrasive wheels seems to have been recognized as a proper subject-matter of a future agreement concerning the division of profits derived from their sale. Upon failure to reach an agreement, plaintiff for the first time claimed the abrasive wheel

was included within the terms of the original contract
of December, 1911.

Is a wheel, used for grinding, an invention "relating
to the manufacture of bricks, stone products, earthen-
ware products or analogous and collateral products,"
within the meaning of those words as used in the con-
tract? Prima facie, a wheel intended to be used for grind-
ing purpose is not an invention relating to the manu-
facture of bricks, stone products or earthenware prod-
ucts, especially when we consider the rule that in cases
of this kind where the product of an inventive mind is
sought to be appropriated under an agreement to as-
sign to another, the language of the agreement must be
clear and show an unmistakable intention that the par-
ticular matter covered by the invention or patent is
within the intention of the parties: Allison Bros. Co. v.
Allison, 144 N. Y. 21; Joliet Mfg. Co. v. Dice, 105 Ill.
649. Measured by this rule the wording of the con-
tract of 1911 fails to measure up to the required stand-
ard. The contract is as susceptible of one construction
as another. The court below, to aid in the construction
and interpret the agreement, and to give it effect accord-
ing to the true intention and understanding of the par-
ties, considered evidence tending to show the nature and
character of the products manufactured by plaintiff at
the date of the agreement and previous thereto, and of the
circumstances leading up to its execution, that it might
have all information necessary to correctly understand
the language, terms and subject-matter of the contract
and place itself intellectually in the situation the parties
were in at the time it was executed: Miller v. Fichthorn,
31 Pa. 252. Proof of this character is properly received,
not to vary the writing, but to explain the meaning of
doubtful terms: Foster v. McGraw, 64 Pa. 464; Bubb
v. Parker & Edwards Oil Co., 252 Pa. 26.

From the testimony offered, as well as the conclusion
of the referee, it clearly appears neither party had in
mind, at the time of making the contract, the possibility

of the invention of an abrasive wheel, nor was plaintiff's plant equipped for the purpose of manufacturing such device. On the contrary, plaintiff was engaged in the manufacture of products used for building purposes. The invention in controversy is not in any respect connected with building, nor is it a building material in any sense of the word. It can properly be classed merely as a tool used for the purpose of grinding and polishing objects. While the method of manufacture is to some extent similar to the process followed in manufacturing bricks, the inquiry, as stated by the court below, is not whether the process is the same, but what is the character of the product? The completed product, the abrasive wheel, was not within the general scope of the business plaintiff was conducting at the time the contract was made. All doubt as to the real intention of the parties is removed upon referring to the negotiations preceding and leading up to the signing of the contract. Plaintiff proposed to employ defendant on certain terms, provided defendant assigned all inventions, relating to the business in which plaintiff was engaged, conceived by defendant during the term of his employment. Defendant entered the employ of plaintiff pursuant to the terms of the oral offer and continued in its service for more than a year, when negotiations were entered into with a view of executing a formal written contract. At a consultation, at which the matter was discussed, defendant informed plaintiff's manager of his unwillingness to make an agreement obligating him to assign patents for processes which did not pertain to the manufacture of bricks, wainscoting and articles entering into building construction. Following this interview the written contract of December, 1911, was signed. Whether we view the case from the standpoint of the executed writing alone or of the writing in connection with the preliminary negotiations leading up to its execution, we are clearly of opinion its provisions are limited to inventions concerning the manufacture

of earthenware products relating to building material, and do not apply to or require the assignment of patents for the manufacture of all articles made from earth or clay; consequently a tool in the nature of an abrasive wheel, although composed principally of bauxite clay, is excluded from its terms as not coming within the meaning of the words "earthenware products" as used in this contract; accordingly plaintiff has failed to make out a case sufficient to warrant the granting of the relief it asks.

At the argument we were referred to the cases of Solomons v. United States, 137 U. S. 342, and Gill v. United States, 160 U. S. 426, in support of the principle that where a person in the employ of another plans a new invention and uses the property of his employer and the services of other employees to put the device in practical form and assents to the use of the perfected invention by his employer, he thereby gives to such employer an irrevocable license to use the device. Those cases, however, are clearly distinguishable from the present. Here it is undisputed that the invention was conceived and the preliminary work done outside of the employee's working hours and in a plant not connected with that of the employer, and, while the tool was subsequently perfected and manufactured in plaintiff's plant, the labor necessary to accomplish that result was done under and subject to the completion of negotiations for a proper compensation to defendant in the shape of a proportionate share of the profits to be derived from the manufacture and sale of the patented article. As was said in Gill v. United States, supra, the ultimate fact to be proved is the estoppel arising from the consent given by the patentee to the use of his inventions without demand for compensation. Here no element of estoppel exists, as demand for an agreement, providing compensation, was continually made by defendant from the time the manufacture of the invention was begun in plaintiff's plant.

The decree of the court below is affirmed, costs to be paid by appellant.