493 A.2d 1375

**AETNA-STANDARD ENGINEERING COMPANY, Appellant,**

v.

**Leroy R. ROWLAND.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1984.

Filed May 31, 1985.

66

Walter J. Blenko, Jr., Pittsburgh, for appellant.

William H. Logsdon, Pittsburgh, for appellee.

Before CIRILLO, TAMILIA and MONTGOMERY, JJ.

CIRILLO, Judge:

Appellant Aetna-Standard Engineering Co. ("Aetna") challenges a final decree in equity of the Court of Common Pleas of Butler County, entered May 12, 1983. That decree dismissed both appellant's and appellee Leroy V. Rowland's exceptions, and adopted the trial court's December 30, 1982, order. That order, in turn: 1) declared appellee to be the sole owner of the subject matter in certain enumerated claims in United States Patent 4,037,453; 2) declared appellee to be a joint inventor, with Robert A. Remner, of certain other enumerated claims in the patent; 3) required appellant to execute any documents appellee needed to perfect his ownership interest in the patent; and 4) gave appellant a shop right in the patent limited to the project contract with Ishikawajima-Harima Heavy Industries ("IHI"), a Japanese firm for which the patented article was invented.

Appellant now presents three questions:

1.) Where an employee is hired as a skillful designer of machinery and is assigned to devote his time and skill to solve a specific problem by designing a new machine, does the employer own any invention in the new machine?

2.) Assuming, *arguendo,* that the employer does not own an invention made by the employee as a result of his work assignment, does the employer receive an irrevocable, royalty-free license or "shop right"?

3.) Where United States Letters Patent issue as a result of a joint invention, does each inventor hold an undivided interest in the entire patent? [1]

We conclude that appellant is not entitled to an assignment of appellee's invention, but that it has a shop right for the invention's use. In addition, appellee, as a joint inventor, holds an indivisible joint interest in the patent.

■ We note first that the present controversy does not concern the *validity* or an *infringement* of the involved patent; such disputes are for a federal court's resolution. *See generally* 35 U.S.C. §§ 281–294 (remedies for infringement); *Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 35 S.Ct. 658, 59 L.Ed. 1056 (1914); *Rubens v. Bowers,* 136 F.2d 887 (9th Cir.1943). Appellant Aetna's questions presented pertain instead to the assignment and divided ownership of patent rights and to shop rights in a patented invention. These "incidental and collateral" issues of property rights in an invention a state court may entertain. *Quaker State Oil Refining Co. v. Talbot,* 315 Pa. 517, 174 A. 99, *appeal after remand* 322 Pa. 155, 158, 185 A. 586, 587 (1936). *See also Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 213 A.2d 769 (1965); *Slemmer's Appeal,* 58 Pa. 155 (1868).

■ We also note that appellant does not allege that appellee, by retaining his interest in the instant patent, has

---

1. As will be seen, appellant Aetna may question the nature of a joint inventor's interest in a patent because Remner assigned his interest in the patent in dispute to appellant; appellant thus has a direct interest in the resolution of this question.

misappropriated any trade secrets of appellant. Such an allegation would be separate from and independent of assignment, joint inventor and shop right issues.[2]

The major body of law on an employer's and employee's respective rights in the inventive or creative work of the employee evolved in the nineteenth and early twentieth centuries during our nation's industrial revolution.[3] The United States Supreme Court has announced several rules for defining these rights. In the leading case of *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933), the Court stated that the mere existence of an employer-employee relationship does not of

**2.** On an employee's abuse of confidence and misappropriation of his employer's trade secrets, *see FMC Corp. v. Spurlin*, 596 F.Supp. 609 (W.D.Pa.1984); *Reinforced Molding Corp. v. General Electric Co.*, 592 F.Supp. 1083 (W.D.Pa.1984); *Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273 (1976); *Van Products, supra; West Mountain Poultry Co. v. Gress*, 309 Pa.Super. 361, 455 A.2d 651 (1982); *Air Products and Chemicals, Inc. v. Johnson*, 296 Pa.Super. 405, 442 A.2d 1114 (1982); *Computer Print Systems, Inc. v. Lewis*, 281 Pa.Super. 240, 422 A.2d 148 (1980). Trade secret, patent and shop right issues are closely related, but a federal court's finding that a patent was not infringed will not by itself bar an employer's claim under state law for misappropriation of trade secrets. *Sims v. Mack Truck Corp., Etc.*, 608 F.2d 87 (3d Cir.1979), *cert. denied* 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980); *Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424 (3d Cir.1982). *See also* P.W. Leuzzi, "Process Inventions: Trade Secret or Patent Protection," 66 J.Pat.Off.Soc'y. 159 (1984).

**3.** The modern "industrial revolution" is manifest in the growing body of law on computer products, bioengineering, and the electronic recording and reproduction of information. *See, e.g., Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574, *rehearing denied* 465 U.S. 1112, 104 S.Ct. 1619, 80 L.Ed.2d 148 (1984) (sale of video recorders for use in homes not a contributory infringement of television program copyrights); *Diamond v. Chakrabarty*, 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980) (genetically engineered microorganism patentable "process" under 35 U.S.C. § 101); *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972) (method for programming ordinary digital computer to convert binary coded decimal numerals into pure binary numerals not a patentable "process" under 35 U.S.C. § 101); Stephen Breyer, "The Uneasy Case for Copyright: A Study of Copyright in Books, Photocopies, and Computer Programs," 84 Harv.L.Rev. 281 (1970); E.W. Guttag, "The Patentability of Microorganisms: Statutory Subject Matter and Other Living Things," 13 U.Rich.L.Rev. 247 (1979); R.O. Nimtz, "The Patentability of Computer Programs," Rutgers J. Computers & Law 1970:38 (1970).

itself entitle the employer to an assignment of any inventions which the employee devises during the employment.

At the same time, however, the absence from the employment contract of an express agreement to assign will not preclude the employer as a matter of law from asserting a claim to the employee's invention. *See Agawam Co. v. Jordan*, 74 U.S. (7 Wall.) 583, 19 L.Ed. 177 (1868). Instead, a court must closely scrutinize the employment contract, so that, absent an express contrary agreement, an employee must assign his invention to his employer if he was hired for the purpose of using his inventive ability to solve a specific problem or to design a certain procedure or device for the employer; in such a case, the invention is the precise subject of the employment contract. *Dubilier Condenser, supra; Standard Parts Co. v. Peck*, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560 (1924); *Solomons v. United States*, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667 (1890). Given the personal, intellectual nature of the inventive process, the courts must otherwise hesitate to imply agreements to assign. *Dubilier Condenser, supra. See generally* N. Alam, "Employers' Obligations Regarding Employee Inventions—A New Perspective," 8 Empl.Rel.L.J. 463 (1982–83); Comment, "Reform for Rights of Employed Inventors," 57 S.Cal.L.Rev. 603 (1984).

Although an employer might not be entitled to an assignment of the employee's invention—that is, of his patent—the employer will likely have a license or "shop right" to use the invention without paying the employee any additional compensation as royalties; the shop-right rule thus creates an exception from the employee's patent right to exclude others from making or using his invention. As in the law on assignment of inventions, the employment relationship, standing alone, does not give the employer a shop right; the employer might have to show an express agreement for the right. *See McAleer v. United States*, 150 U.S. 424, 14 S.Ct. 160, 37 L.Ed. 1130 (1893). A shop right will arise, however, where the employee devises the invention on the employer's time and at the latter's expense,

using his materials and facilities, and allows him to use the invention without special compensation. *See Dubilier Condenser, supra; Gill v. United States,* 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480 (1896); *Keyes v. Eureka Consolidated Mining Co.,* 158 U.S. 150, 15 S.Ct. 772, 39 L.Ed. 929 (1895); *Lane & Bodley Co. v. Locke,* 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049 (1893); *Dalzell v. Dueber Watch Case Manufacturing Co.,* 149 U.S. 315, 13 S.Ct. 886, 37 L.Ed. 749 (1892); *Solomons v. United States, supra; Wade v. Metcalf,* 129 U.S. 202, 9 S.Ct. 271, 32 L.Ed. 661 (1889); *Hapgood v. Hewitt,* 119 U.S. 226, 7 S.Ct. 193, 30 L.Ed. 369 (1886); *McClurg v. Kingsland,* 42 U.S. (1 How.) 202, 11 L.Ed. 102 (1843). *See also* S.P. Sondrock, "Evolution and Modern Application of the Shop Right Rule," 38 Bus.Law. 953 (1983). Under this rule, an employee may not recover on an implied contract for payment for the shop right. *Gill v. United States, supra.*

The Pennsylvania courts, and the federal courts sitting in Pennsylvania, have long applied the Supreme Court's rules on employers' and employees' rights to inventions virtually verbatim. In the early case of *Slemmer's Appeal, supra,* the plaintiffs claimed to be joint inventors with the defendant employee of a patented invention. Our Supreme Court could not agree with the plaintiffs, as such a holding would invalidate the patent, an action beyond the Court's jurisdiction. Instead, the Court applied a license theory, and stated:

> [I]f a person employed in the manufactory of another, while receiving wages, makes experiments at the expense of his employer, constructs the article invented and permits his employer to use it, no compensation for the use being paid or demanded, and then obtains a patent, these facts will justify the presumption of a license to use the invention.

*Slemmer's Appeal,* 58 Pa. at 167.

This principle was followed in *Dempsey v. Dobson,* 174 Pa. 122, 34 A. 459, *appeal after remand* 184 Pa. 588, 39 A. 493 (1898). There, the plaintiff employee was a color-mixer

for a carpetmaker.. His duties were to blend dyes for decorating the carpets, and then to record the dyes' formulae in "recipe books"; the employee wanted to take these books with him when he quit the employer's shop. The Court noted that the employee had been hired, and his wages fixed, with reference to his skill and experience in using dyes and making carpets, and that he was not an independent contractor using his own secret processes.

In the first appeal, the Court viewed *Dempsey* as a much stronger case for the employer than had been *Slemmer's Appeal:* in *Dempsey*, the dye experiments, recorded in the recipe books, were not only conducted at the employer's expense but also at his request and for use in his business. In addition, the employee had been hired because of his special skill and experience in working with dyes. Accordingly, the employee could use his own color books in his future employment, but his former employer had a license to do likewise. *Dempsey*, 174 Pa. at 130–31, 34 A. at 461.

The Court reiterated this rule in the appeal after remand, over the employee's claim that it was a trade custom for color-mixers to take their dye formulae with them when they left a particular manufacturer. Such a "custom," the Court said, was invalid as illegal and unreasonable: a mixer is employed because of his particular skill, and cannot harm his employer's business by removing the results of that skill and denying the employer's license to use them. *Dempsey*, 184 Pa. at 592–93, 39 A. at 493.

Other cases have applied these same rules on implied licenses or shop rights. *See Ingle v. Landis Tool Co.*, 272 Fed. 464 (3d Cir.1921), *cert. denied* 257 U.S. 644, 42 S.Ct. 54, 66 L.Ed. 413 (1921); *Pressed Steel Car Co. v. Hansen*, 137 Fed. 403 (3d Cir.1905), *cert. denied* 199 U.S. 608, 26 S.Ct. 749, 50 L.Ed. 331 (1905); *Wellington Print Works, Inc. v. Magid*, 242 F.Supp. 614 (E.D.Pa.1965); *Kurtzon v. Sterling Industries, Inc.*, 228 F.Supp. 696 (E.D.Pa.1964); *Toner v. Sobelman*, 86 F.Supp. 369 (E.D.Pa.1949).

In *White Heat Products Co. v. Thomas*, 266 Pa. 551, 109 A. 685 (1920), our Supreme Court made clear that the

"black-letter law" of employer and employee rights to a patented invention must be applied to the facts of a case with careful regard to the particular terms of the individual employment contract. In *White Heat*, the defendant employee, hired as an expert in the use of silica, designed and patented an abrasive grinding wheel. The employer sought to compel him to disclose his invention and to assign his patent to it. The Court, however, held that

> where the product of an inventive mind is sought to be appropriated under an agreement to assign to another, the language of the agreement must be clear and show an unmistakable intention that the particular matter covered by the invention or patent is within the invention of the parties.

*Id.*, 266 Pa. at 555, 109 A. at 686 (citations omitted).

The *White Heat* Court found no such clarity in the agreement before it. The plaintiff was in the business of making products for use in building, and the defendant had contracted to assign to it any patents he received for inventions relating to brick-making. The abrasive wheel, the Court found, was not related to building, and so was outside the assignment contract, nor did the plaintiff have an implied, irrevocable license to use the wheel, where it was designed, and its preliminary construction done, outside working hours and at another plant; in addition, the labor to complete the wheel was performed subject to negotiations between the plaintiff and defendant for the defendant's share of the profits made from the wheel's sale, and the defendant had not consented to the plaintiff's use of the wheel without demanding an agreement on compensation. *Id.*, 266 Pa. at 557, 109 A. at 686–87.

*Quaker State Oil Refining Co. v. Talbot, supra,* presented a factual situation seemingly similar to that in the case now before us. In *Quaker State*, the defendant employee was hired by an oral contract to design a specific oil dispensing drumhead for the plaintiff to manufacture. He designed the drumhead, but incorporated into it several devices which he had invented before his employment with

the plaintiff. The plaintiff, as in *White Heat, supra,* sought to compel the defendant to assign to it legal title to, or any patent application or patents for, the drumhead.

At the time of the first appeal in *Quaker State,* certain patent issues involving the drumhead had not been settled under federal law; the Court therefore had to remand for further proceedings pending final disposition of these matters. However, regarding any assignment arguments, the Court noted:

> Where an employee by contract is hired to make a particular invention or solve a specific problem for the employer the property in the inventions of the employee belongs to the employer—the employee has sold in advance the fruit of his talent, skill and knowledge, to his employer, who is equitably entitled to it; in making such inventions or solving such problems the employee is merely doing what he was hired to do.

*Quaker State,* 315 Pa. at 523, 174 A. at 101–02 (citations omitted). *See also Hirshhorn v. Mine Safety Appliances Co.,* 106 F.Supp. 594 (W.D.Pa.1952), *aff'd.* 203 F.2d 279 (3d Cir.1953), *cert. denied* 346 U.S. 866, 74 S.Ct. 105, 98 L.Ed. 376 (1953). *But see Pressed Steel Car, supra* (where skilled workman is hired at substantial salary to manage employer's manufacturing works, employer is not entitled to assignment of employee's patents as a matter of law, but must show express agreement to convey them). *See also Hildreth v. Duff,* 143 Fed. 139, *aff'd.* 148 Fed. 676 (3d Cir.1906). The *Quaker State* Court also commented that, independent of the employer's right to the completed drumhead, it had no rights in any of the individual component devices which the employee had patented before commencing work for it, unless it paid him appropriate compensation. *Quaker State,* 315 Pa. at 528, 174 A. at 103.[4]

---

**4.** After *Quaker State* was returned to the trial court, Talbot and another individual filed suit in a federal district court, alleging Quaker State's patent infringement. *See Talbot v. Quaker State Oil Refining Co.,* 104 F.2d 967 (3d Cir.1939). The state trial court then entered a decree finding that none of Talbot's devices, invented before he joined Quaker State, were patentable, and that he was thus not entitled to

 Deciding an employer's and employee's rights in an invention patented by the employee thus requires close examination of the employment contract, of any assignment provisions in that contract, of the nature of the employment, and of the circumstances surrounding the invention in dispute. Proof of an employer-employee relationship does not alone give the employer rights in the invention, particularly where the contract was for general employment. On the other hand, the existence of a patent in the employee's name does not itself bar the employer's claim. During our examination, we keep in mind that a court must hesitate to imply agreements to assign, although it may readily grant the employer a shop right to use the invention.

In the instant case, Rowland's resume, by which he applied to Aetna for employment, recited his training and experience in engineering, particularly in engineering design. Rowland testified that he commenced employment with Aetna with no understanding that he would be paid to design new equipment. He had no written contract with Aetna, nor an oral agreement to assign to it any inventions he designed during his employment; he was not specifically informed that his duties included devising new inventions. In addition, he received no pay increase upon his assignment to the IHI project, but was instructed that he was to develop a "plug mill receiving table" for the IHI mill, the subject of Aetna's project contract with that firm.[5] After completion of the table design, Rowland signed a disclosure document for the table as a joint inventor with Remner, who had been his supervisor on the project. Rowland met

compensation for Quaker State's use of them. On the second appeal, our Supreme Court vacated the decree, on the ground that a state court may not determine patentability, and remanded again for a determination of the compensation due Talbot, pending the federal court's determination that Talbot did in fact hold valid patents. *Quaker State*, 322 Pa. at 160, 185 A. at 588.

5. Seamless tubes first exit a "piercing mill," and then are rolled onto a "plug mill," which rotates them to decrease the thickness of their walls. A "plug mill receiving table" moves the tubes from the piercing mill to the plug mill. After the tubes pass out of the plug mill, the receiving table rotates them ninety degrees, and reinserts them into the plug mill, to ensure consistency in the reduced wall thickness.

with Aetna's patent attorney to explain the drawings of the table. Upon the company's request, Rowland also signed the application for the patent, which similarly named him and Remner as joint inventors. However, he was later put on lay-off from Aetna; at this time, the latter asked him to assign his interest in the patent to it. He refused. Remner, who also no longer worked for Aetna, assigned his interest. *See* 35 U.S.C. § 261 ("Ownership; assignment"); *Lalance Manufacturing Co. v. National Enameling Co.*, 108 Fed. 77 (2d Cir.1901).

■■■ On these facts, appellant is not entitled to an assignment of appellee's invention of the table. Appellee was hired as a general staff engineer; he was not recruited specifically to design the IHI table, in contrast to the situation presented in *Quaker State, supra.* He received no special compensation for his work on the IHI contract; rather, that work was simply within the normal scope of his duties as an Aetna engineer. More importantly, he had no express agreement with appellant, written or oral, to assign to it any inventions he created during his employment. Finally, appellant asked appellee to sign the disclosure document and, most significantly, the patent application, as a joint inventor with Remner: appellant made no claim to the patent until after it had discharged appellee. On these facts, we cannot imply an agreement in appellee's employment contract to assign his invention to appellant.

■■■ However, we find that, under the case-law discussed above, appellant has a shop right to use the patented table. Appellee testified that he assumed appellant would own any inventions he designed. The table was designed at appellant's place of business and with its resources for appellant's IHI contract. While appellant has no right to appellee's patent interest, it is entitled to the royalty-free, non-exclusive use of the table in its IHI project.

■■■ Finally, it is beyond question that joint inventors or co-owners of a patent have indivisible rights to the whole patent, which rights cannot be fragmented into claim-by-

claim interests. *See Talbot v. Quaker State, supra* at 968; *GAF Corp. v. Amchem Products, Inc.*, 514 F.Supp. 943 (E.D.Pa.1981); 35 U.S.C. § 116 ("Inventors"). Thus, the trial court erred in defining Remner's and Rowland's interests in the instant patent on a per-claim basis. Instead, each inventor had an undivided one-half interest in the entire patent; Aetna owns Remner's half-interest by the latter's assignment.

The decree of the Court of Common Pleas of Butler County is affirmed insofar as it requires appellant to execute documents necessary for appellee to perfect his interest in United States Patent No. 4,037,453 and declares appellant to have a shop right in the patent for the IHI contract. The decree is reversed insofar as it declares appellee and Robert A. Remner to be owners or co-owners of individual claims of the said patent.

Affirmed in part, reversed in part.