HILDRETH v. DUFF et al.

(Circuit Court, W. D. Pennsylvania. February 1, 1906.)

No. 15.

1. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—CERTAINTY.

A contract reciting that one party, a candy manufacturer, was desirous of having perfected and manufactured "a certain machine or machines for use in the manufacture of candy," and by which the second agreed to enter his employment and to devote his services to such work, giving the first party the full benefit and enjoyment of any and all inventions and improvements he might make relating to machines or devices pertaining to the first party's business, does not so clearly import an agreement by the employé to assign a patent for an invention made by him relating to candy making, but differing essentially from any machine then known or used by the first party, as to warrant a court in decreeing its specific performance as so construed.

2. CONTRACTS—CONSTRUCTION—AGREEMENT WITH RESPECT TO FUTURE INVENTIONS.

An agreement by an employé to give his employer, who was a candy manufacturer, "the full benefit and enjoyment" of any and all inventions which he might make pertaining to the employer's business, imports an agreement for a shop right or license to use such inventions merely, and does not entitle the employer to an assignment of patents secured by the employé therefor.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 71; vol. 38, Cent. Dig. Patents, §§ 125, 272, 302.]

In Equity. On bill and cross-bill and proofs.

J. Snowden Bell and D. F. Patterson, for complainant.

Kay, Totten & Winter and Dalzell, Scott & Gordon, for respondents.

ACHESON, Circuit Judge. The original bill was brought by Herbert L. Hildreth against Robert P. Duff and Edward A. Kitzmiller, copartners doing business as P. Duff & Sons, to compel them to assign to the complainant letters patent No. 736,313, for a method of pulling candy, granted on August 11, 1903, to Chas. Thibodeau, as assignor to Catherine M. Thibodeau, and by her assigned to the defendants, and also the defendants' interest under an assignment to them by Chas. Thibodeau in an application filed by the latter for letters patent for a candy pulling machine, and to enjoin the defendants from the further use, benefit, enjoyment, leasing, or sale of the inventions, improvements, machines, and devices, covered by said patent or said application, and from prosectuing or bringing suits for the infringement of the method patent. The bill of complaint is based upon the following instrument:

"Whereas Herbert L. Hildreth of Boston, candy manufacturer, is desirous of having perfected and manufactured a certain machine or machines for use in the manufacture of candy, and especially for sizing, shaping, cutting, wrapping and packing, also the pulling of molasses candy, and whereas I, Chas. Thibodeau, being a skilled mechanic, and desirous of entering the employ of said Hildreth for the purpose of constructing, improving and perfecting such machinery: Now, therefore, in consideration of such employment and of the payment of wages to me at the rate of ($3.25) three dollars and twenty-five cents per day, I hereby agree with said Hildreth to enter his employ, and that I will give him my best services, and also the full benefit and enjoyment of any and all inventions and improvements which I have

made or may hereafter make relating to machines or devices pertaining to said Hildreth's business. I also further agree that should said Hildreth not desire to patent any of said inventions or improvements, but to keep the same secret, I will do all in my power to assist him in this, and will not disclose any information as to the same or any of them, except at the request of said Hildreth.

"Signed at Boston, Mass., this 29th day of May, 1897.

"Charles Thibodeau."

At the opening of this discussion, I have to say that the determination in the case of Thibodeau v. Hildreth, 124 Fed. 892, 60 C. C. A. 78, 63 L. R. A. 480, is not controlling here; and I particularly note that the court in that case was not called on to determine the scope of the Thibodeau contract, and did not interpret its scope. The extent to which the actual adjudication went was that the contract was not unconscionable nor against public policy, and that Thibodeau was not entitled to have it delivered up and canceled.

It appears that the foregoing paper, which the complainant seeks to have specially performed, was prepared exclusively by him and his legal adviser, and that Thibodeau knew nothing about its terms until it was presented to him for signature. This is a fact fairly to be considered, if there is any doubt as to the meaning of the paper or it is reasonably open to more than one interpretation. Noonan v. Bradley, 9 Wall. 394, 407, 19 L. Ed. 757. I think this just rule is particularly applicable to the facts of the present case.

At the time the paper was signed, machines for pulling candy, such as that here in question, to take the place of the men who pulled the candy over hooks to whiten it, were not known in the art. No such machine was in use in Hildreth's business nor in course of construction for him. Under the circumstances, neither Hildreth or Thibodeau could have contracted with immediate reference to such a machine. At that time, however, machines performing a different kind of pulling operation were known to and used in the trade. The function of that machine was to pull the candy down to the requisite size to feed the cutting and wrapping machine, doing the work of a girl who was accustomed to pull the candy down to the required size. A pair of such pulling machines were built for Hildreth in March, 1897, about two months before the Thibodeau contract was signed. Thibodeau was familiar with that class of pulling machines, but had no knowledge whatever with respect to any other machine for pulling candy. Therefore it is well within reasonable belief that he understood the words "also for the pulling of molasses candy," especially in view of their associated words, to refer to that class of then known and used pulling machines, as he testifies he did so understand them.

In Colson v. Thompson, 2 Wheat. 336, 4 L. Ed. 253, the court said:

"The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

In the recital of the paper in controversy, which is the key to the meaning of the parties, it is not machines generally, but "a certain

machine or machines," which Hildreth is desirous of having "perfected and manufactured," and it is on such machines that Thibodeau is to be employed for the purpose of "constructing, improving and perfecting." Now, this recital, in view of its specific reference to a certain machine or machines, cannot fairly be construed to cover a machine not then known to the art and radically different from any known machine. The more general words subsequently employed in the body of the paper ought not to be held to have a larger scope than the language of the recital, especially as they expressly relate to machines or devices "pertaining to said Hildreth's business." McFarland v. Stanton Manufacturing Company, 53 N. J. Eq. 649, 650, 33 Atl. 962, 51 Am. St. Rep. 647. Looking at the whole paper, it seems to me that Thibodeau had a right to understand that the contract related to Hildreth's business as then conducted, and that the machines mentioned in the body of the paper were not other than such as had already been made the subject of recitation. At any rate, the interpretation which the complainant seeks to have put on the general terms in the body of this paper is by no means so clearly its import as to meet the requirement laid down, as we have seen, by the United States Supreme Court. Nor can it, I think, be successfully maintained that the terms of this paper are so precise as that neither party could reasonably misunderstand them. The foregoing views lead to a decree adverse to the complainant.

But, furthermore, the complainant's right to the relief sought rests upon the theory that by the contract Thibodeau bound himself to assign his inventions to the complainant. We search, however, the paper in vain for any such stipulation. On the contrary, the engagement of Thibodeau is to give to Hildreth "the full benefit and enjoyment" of all his inventions or improvements relating to machines or devices pertaining to Hildreth's business. Now, by all the authorities, this imports and confers only a shop right or mere license to use an invention. Whiting v. Graves, 3 Ban. & Ard. 222; Wilkins v. Spafford, 3 Ban. & Ard. 274; Hapgood v. Hewitt (C. C.) 11 Fed. 422; Hapgood v. Hewitt, 119 U. S. 226, 233, 7 Sup. Ct. 193, 30 L. Ed. 369; Dalzell v. Dueber Manufacturing Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749; 2 Robinson on Patents, § 832. Moreover, the business of Hildreth at the time the contract was made was that of a candy manufacturer. He was a mere user of machines, and not then engaged in the manufacture or sale of machinery. Clearly he bargained only for the "full benefit and enjoyment," that is, the use, of Thibodeau's inventions. Had it been intended that Hildreth should have the ownership of or title to the inventions, this would have been specifically stated in the contract. The secrecy clause is an independent provision and cannot be held to enlarge the express user stipulation. Of course, the view just presented is fatal to the complainant's case.

There still remains the question whether there is such privity between Charles Thibodeau and Catherine, his wife, and the defendants, as would deprive the defendants of an independent defense based upon alleged equities of their own. This question, however, I do not think it necessary to discuss or to consider, in view of the above-stated con-

clusions upon other points, which require the dismissal of the bill. I therefore intimate no opinion on this branch of the case.

It only remains for me to say that I think the defendants are entitled to relief under the prayers of their cross-bill, but I am not now prepared to indicate with precision the extent of that relief. This can be done more properly when counsel present decrees.

Let counsel prepare and submit decrees.