BEIDLER ET AL., APPELLEES, *v.* DAVIS, APPELLANT.

(Two cases.)

(Nos. 1035 and 1039—Decided February 9, 1943.)

*Mr. Mark Storen, Mr. Charles P. Mayoh* and *Messrs. Stevens & Stevens,* for appellees.

*Messrs. Boyd, Brooks & Wickham* and *Mr. Frank M. Wilcox,* for appellant.

STEVENS, P. J. These cases, involving the same subject-matter, were, by agreement, heard and considered together by the court.

The action below, filed by plaintiff Beidler, an assignee of coplaintiff John H. Gardner's rights under a patent assignment from defendant (Davis) to Gardner, sought to have specifically enforced that latter contract of assignment.

Before this court, the matter appears as two appeals by the defendant on questions of law and fact. The same relief is here sought as was sought in the Court of Common Pleas.

The assignment in question, identified as "exhibit A" attached to plaintiffs' petition, provides as follows:

"Whereas, I, Walwin L. Davis of LaPorte, Indiana, have made certain new and useful inventions and improvements in rotary pumps for which an application

for letters patent of the United States, identified as
follows:

"Serial No.............

"Filed................

"And whereas, I have, of even date herewith, grant-
ed a license to The Gardner Dairy Equipment Cor-
poration, a corporation organized and existing under
and by virtue of the laws of the state of Michigan, and
having its principal place of business at LaPorte, In-
diana, to practice the said invention exclusively in the
dairy industry, and

"Whereas, John H. Gardner of LaPorte, Indiana,
is desirous of acquiring an interest in and to said in-
ventions and applications and in and to the letters
patent to be obtained therefor:

"Now, therefore, to all whom it may concern, be it
known that, subject to the foregoing license, I, Walwin
L. Davis, for and in consideration of the sum of One
Dollar to me in hand paid, and other good and valu-
able considerations, the receipt whereof is hereby
acknowledged, have sold, assigned and transferred,
and by these presents do sell, assign and transfer,
unto the said John H. Gardner, his successors or as-
signs, one-half part of the entire right, title and inter-
est in and to all inventions and improvements disclosed,
set forth, described and claimed in the above-recited
application, or in any division, continuation or renewal
thereof, and in and to any and all letters patent which
may be granted thereon, and any reissues or exten-
sions thereof; and I do hereby authorize and request
the commissioner of patents to issue the said letters
patent jointly to the said John H. Gardner and my-
self, Walwin L. Davis, as the joint owners of the entire
right, title and interest in and to the same, for the
joint use and behoof of the said Walwin L. Davis and
John H. Gardner, their heirs, successors and assigns.

"This assignment is made with the understanding that all benefits and profits arising from the further exploitation of said interest in and to the said invention will be divided equally between said Walwin L. Davis and John H. Gardner, and with the further understanding that no further rights involving the said invention shall be granted to parties foreign to the present agreement without the consent of the other party, in writing, first obtained.

"And I, Walwin L. Davis, for the consideration aforesaid, do hereby agree that I, my executors and legal representatives, will make, execute and deliver any and all other instruments in writing, and any and all further application papers, affidavits, assignments, and other documents which may be necessary or desirable more effectually to secure to and vest in said Walwin L. Davis and John H. Gardner, jointly, their heirs, successors or assigns, the entire right, title and interest in and to the said improvement, invention, application, letters patent, rights, titles, benefits, privileges and advantages hereby sold, assigned and conveyed, or intended so to be, and subject to the foregoing license.

"In Testimony Whereof, I have hereunto set my hand and affixed my seal, this 2nd day of July, 1937.
                    "(Signed)     Walwin L. Davis.
"(Acknowledged and witnessed.)"

On June 23, 1939, almost two years after the execution of the contract sought to be specifically enforced, defendant (Davis) in his own name made an application for a patent upon a rotary pump for use in a field entirely outside the dairy industry. That pump is now being produced by The Romec Pump Co., of Elyria, under a license agreement with Davis, and apparently the patent therefor is productive of some return by way of royalty.

On December 17, 1940, plaintiff Beidler procured an

assignment in writing from Gardner, whereby Gardner transferred all of his rights under exhibit A above set forth to Beidler.

It is the claim of Beidler and of his coplaintiff, Gardner, that exhibit A refers to and assigns a half interest in the patent covering the airplane fuel pump for which application was made by Davis in June, 1939.

Davis, on the other hand, by his pleadings and his evidence, claims that exhibit A is void for uncertainty because it does not describe the subject-matter of the assignment (exhibit A); but in the alternative, says that, should that contention not be sustained, the subject of the assignment (exhibit A) was a model B rotary homogenizer pump, claimed to have been invented by defendant, and used in the dairy business. It was in the manufacture of this latter pump that Gardner was engaged.

A preliminary matter to be disposed of by the court is the petition of John H. Gardner.

Under the terms of Gardner's assignment to Beidler, Gardner transferred to Beidler not only all of his right, title and interest in and to one-half of the invention there described, but also "all rights of action either at law or in equity which I may have acquired by virtue of an assignment in my favor executed by the said Walwin L. Davis under date of July 2, 1937."

There thus remains in Gardner no interest which he could properly assert in this litigation, and his petition is ordered dismissed, at his costs.

It will be rememberd that the relief sought by the plaintiff Beidler is the specific performance of a contract.

Since specific performance is an equitable remedy, available under some circumstances to protect rights under contracts, it is necessary that there be not only a contract, but a valid, binding contract, "unobjectionable in any of its features."

Does exhibit A, within the four corners of the instrument, square with those requirements?

The preamble of the instrument states:

"Whereas, I, Walwin L. Davis of LaPorte, Indiana, have made certain new and useful inventions and improvements in rotary pumps for which an application for letters patent of the United States, identified as follows:

"Serial No............

"Filed.............."

No verb follows the foregoing recital to indicate whether the application mentioned has been filed, will be filed, or is being prepared.

The granting clause of the instrument purports to convey "one-half part of the entire right, title and interest in and to all inventions and improvements disclosed, set forth, described and claimed in the above-recited application," but the application is in no wise identified.

Attempt has been made by plaintiff to supply the omission, by the introduction of parol evidence as to the subject-matter of the assignment.

Defendant has strenuously objected to such procedure, upon the claim that the written instrument is utterly void for intrinsic indefiniteness of terms.

The rule has been announced in 6 Page on the Law of Contracts (2 Ed.), Section 3281, as follows:

"Certainty—General Principles. To be enforceable, either at law or in equity, a contract must be definite and certain. Certainty is especially necessary if specific performance is sought, since the court must necessarily decree performance of the contract in such terms that the party against whom the decree is entered can ascertain from the decree itself what he is bound to do; and unless the contract itself is definite, the court can not frame a definite decree. The same

idea is expressed in other words when it is said that the court can enforce a valid contract by specific performance, but that it can not make a contract for the parties if they have not made one for themselves in sufficiently definite terms. Accordingly, specific performance may be refused because the contract is indefinite and uncertain * * *.''

See, also, 9 Wigmore on Evidence (3 Ed.), Section 2473.

On the subject of the admissibility of parol evidence to ascertain the meaning of a contract in writing, the headnote of Section 959 in 32 Corpus Juris Secundum, Evidence, states the following:

''Where a written instrument is ambiguous, parol evidence is admissible to ascertain its meaning, but parol evidence is not admissible to add to or detract from the writing.''

And in the text of said section it is stated:

''So also, if there is doubt and uncertainty, not about what the substance of the contract is, but as to its peculiar application, it may be explained and properly directed. * * *

''An 'ambiguity' in a writing which will warrant the introduction of parol evidence is duplicity, indistinctness, or an uncertainty of meaning or expression, *and a mere omission or mistake is not an ambiguity*. (Italics ours.) * * *

''Where the language used is too doubtful for any settled construction, parol evidence cannot, it has been held, be received to create instead of merely construing the contract, for this would be an attempt to do for a party that which he has not chosen to do for himself, and the law very properly denies such authority to courts of justice. Also, if the writing leaves the agreement of the parties vague and indefinite as to an essential element thereof, it is no contract and cannot be made one by parol.''

It is the opinion of the court that the contract under consideration, not having identified the subject matter thereof within the contract itself, was not ambiguous, so as to permit the introduction of parol evidence, but was so indefinite as to subject matter as to make improper the introduction of parol evidence to explain the subject matter of the contract. In such a situation, specific performance is denied.

However, assuming, for the purpose of argument only, our conclusion upon this question to be incorrect, then conceding the propriety and admissibility of all evidence offered bearing upon the subject matter of the contract, has the plaintiff produced evidence of sufficient probative value to entitle him to a decree of specific performance?

In 58 Corpus Juris, Specific Performance, Section 96, the following appears:

"Certainty—a. In General. To warrant a decree of specific performance thereof, a contract must be definite and certain, and free from doubt, vagueness, and ambiguity, in its essential elements and material terms. Clearness is required. The terms of the contract must be so clear, definite, certain, and precise, and free from obscurity or self-contradiction, that neither party can reasonably misunderstand them, and the court can understand and interpret them, without supplying anything or supplanting vague and indefinite terms by clear and definite ones through forced or strained construction. A greater degree of certainty is required in a suit in equity for specific performance than in an action at law for damages; and as against assignee and representatives of the contracting parties, it is said that the requirement of certainty is more than ordinarily stringent. * * *"

An interesting observation, pertinent to the situation here under consideration, was made by the court

in *Southern Lead Corp.* v. *Glass,* 103 Fla., 657, 138 So., 59, as follows:

"In so far as the assignment relied on attempted to deal with an alleged *pending* application which was not in existence at the time, it was *nudum pactum* and unenforceable as an actual assignment in equity by specific performance, or by injunction or otherwise."

In the federal courts, the rule as to specific performance of patent assignments has been stated to be:

"Assignments of patents ought always to distinctly describe the patent assigned. It is the duty of assignees of patents to see that their assignments do distinctly describe the patents, and if the language of the assignment contains no reference to the patent, but leaves in doubt the question of whether the patent was intended to be included, I think the doubt ought to be resolved against the assignee, in suits between him and third parties, until he has obtained a clear conveyance." *Levy* v. *Datllebaum,* 63 F., 992.

Upon the subject of burden of proof, there appears in *Monsanto Chemical Works* v. *Jaeger,* 31 F. (2d), 188, this statement (at p. 191):

"When specific performance is sought of a contract, the burden of establishing the precise terms and certainty of the contract rests on him who seeks performance. *Hildreth* v. *Duff,* 143 F., 139 (C. C. 3d); *Hennessey* v. *Woolworth,* 128 U. S., 438, 9 S. Ct., 109, 32 L. Ed., 500."

Keeping in mind the contents of the foregoing pronouncements, our examination of all of the evidence presented, conceding the same to be admissible, leads us to unanimously conclude that the plaintiff has failed to establish his contentions by the requisite degree of proof.

His petition must therefore be dismissed, at his costs.

It is accordingly so ordered.

*Decree accordingly.*

WASHBURN and DOYLE, JJ., concur.