Hall, Appellant, *v.* The Sheraton Hotel of Philadelphia.

564

Argued November 21, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused February 13, 1953.

*J. Channing Ellery,* with him *Yale L. Schekter* and *Rambo & Mair,* for appellants.

*Samuel D. Goodis,* with him *Edward M. Spector* and *Sundheim, Folz, Kamsler & Goodis,* for appellee.

Opinion by Mr. Justice Jones, January 5, 1953:

The plaintiffs, duly registered real estate brokers, sued to recover their respective shares of the commission allegedly due on the sale of a property belonging to the defendant. The claims are based upon a verbal promise by the defendant to the plaintiffs which was subsequently confirmed in several written agreements between the defendant and the purchaser relative to the sale and purchase of the property. The defendant filed preliminary objections setting forth that "the Complaint discloses that the consummation of settlement for the premises in question, is a condition precedent to the plaintiffs' becoming entitled to payment of commissions for the sale of said premises, and that no settlement therefor has taken place."

The learned court below confined its construction of the agreement respecting commissions, as claimed by the plaintiffs, to but one of the confirmatory writings between the defendant and the purchaser which were referred to in the complaint and attached thereto as exhibits. Altogether, the exhibits to the complaint consisted of an option agreement, an agreement of sale and two subsequent extension agreements postponing the date of settlement. The court below, being of the opinion that settlement for the property was a condition precedent to the defendant's liability to pay the specified commissions and finding that the complaint contained no averment that such condition had been met, held that the complaint failed to state a cause of action and, sustaining the preliminary objections accordingly, entered the judgment for the defendant from which the plaintiffs bring these appeals.

The option agreement, which was entered into on November 23, 1949, granted to one Stevens an option to purchase the defendant's described realty at a specified price for a period of thirty days. The defendant

directly engaged in the option agreement to pay a commission of $50,000 "upon the exercise of the foregoing option to purchase" and expressly "recognized" the plaintiffs and the Nordblom Company "as the brokers entitled to receive the said commission." The complaint avers that the writing confirmed defendant's verbal agreement with the plaintiffs to pay them compensation as therein stated. The option expired on December 23, 1949, without its having been exercised. Twelve days later (viz., on January 4, 1950) the defendant, as vendor, and Stevens, as purchaser, entered into an agreement of sale for the property. Stevens paid $10,000 on account of the purchase price upon the signing of the agreement which further provided that settlement for the property should be made on or before April 4, 1950, at which time $115,000 additional was to become payable. The sale agreement reaffirmed what the option agreement had stipulated, namely, that "It is understood that Samuel T. Hall and Mendes Solis [the present plaintiffs] . . . and Robert C. Nordblom Company . . . are the brokers who brought about this sale," and further provided that "The Seller agrees to pay to the aforesaid brokers the sum of $50,000.00 as follows: Samuel T. Hall $17,500.00 Mendes Solis $17,500.00 Robert C. Nordblom Co. $15,000.00—10% of said amounts due each of the aforesaid shall be paid at the time of settlement and receipt by the Seller of the sum of $125,000.00, and the balance at the time of the payment in full of the purchase money second mortgage." The agreement of sale also declared that it represented "the entire agreement between the parties hereto, and supersedes the option agreement for the premises herein involved entered into by the parties dated November 23, 1949."

On March 30, 1950, the defendant and the purchaser entered into a supplemental agreement extend-

ing the date of settlement to June 30, 1950, and changing the mode of payment by eliminating the contemplated second mortgage and by providing for payment of the purchase price in full at the *date* of settlement less the aggregate of the outstanding first mortgage. This extension agreement declared that "It is understood and agreed that the $50,000 commissions to be paid by [the seller] to the brokers who brought about this sale shall be paid at the date of settlement" and further provided that "Except as hereinbefore expressly modified or changed, all of the other terms, provisions, and conditions of the [sales] agreement entered into by the parties hereto January 4, 1950, shall continue to remain in full force and effect."

On June 29, 1950, the extension agreement of March 30, 1950, was amended by extending the time within which settlement could be made to December 29, 1950. Nothing was contained in the amendment concerning the payment of the brokers' commissions. But, like the original agreement and the first extension, it provided that "Should [the purchaser] fail to make settlement as herein provided, all sums heretofore, herewith and hereafter paid, or to be paid, on account are to be retained by [the seller] either on account of the purchase money, or as compensation for the damages and expenses that it has been put to in this behalf as [the seller] shall elect." The second extension agreement also declared that "Except as hereinabove expressly modified or changed, all of the other terms, provisions and conditions of the agreement entered into by the parties hereto January 4, 1950, and of the extension agreement entered into by the parties hereto March 30, 1950, shall continue to remain in full force and effect." Final settlement for the property was never made.

The learned court below fastened exclusively upon the phrase, "at the time of settlement", in the provision respecting payment of the brokers' commissions as contained in the agreement of January 4, 1950, and, correlating that phrase to the term, "at settlement" (see *Simon v. Myers,* 284 Pa. 3, 8, 130 A. 256), held, as a matter of law, that actual settlement for the property was a condition precedent to the seller's becoming liable to pay the brokers' commission. What, in the *Simon* case, supra, the court below relied upon was a dictum and not the ruling which was that "Under the circumstances [there] appearing, the words 'at settlement' are ambiguous" and, therefore, open to explanation. Accordingly, the judgment for the plaintiff real estate broker, which had been entered on a court-directed verdict, was reversed with a *venire.*

Likewise, here, it cannot be said that the clause in the agreement of January 4, 1950, respecting payment of the brokers' commissions "at the time of settlement" so conclusively reveals the intent of the parties as to justify the court's holding, as a matter of law, that settlement for the property was a condition precedent to the seller's becoming liable to pay the brokers' commissions. As we have already seen, the extension agreement of March 30, 1950, provided that the "commissions to be paid by [the seller] to the brokers who brought about this sale shall be paid *at the date of settlement*" (Emphasis supplied). Thus, payment of the brokers' commissions could be said to relate to the time fixed for settlement rather than to consummation of the settlement. The ambiguity present is patent. What was said in the *Simon* case, supra, at p. 8, is apposite here,—"In the instant case, as in all others where ambiguous language is used, evidence 'is properly received, not to vary the writing, but to explain

the meaning of doubtful terms': White Heat Products Co. v. Thomas, 266 Pa. 551, 555."

Nor is it unimportant to the issue of fact injected by the ambiguity of the writings that the agreement and extensions provided that the seller, upon the purchaser's failure to make settlement, should have the right to retain the amount of money *already* paid on account of the purchase price. (The partial payments by the purchaser up to December 29, 1950, aggregated $127,500.) True enough, the extension agreements also authorized the seller to elect whether to apply the money so obtained to "purchase money, or as compensation for the damages and expenses that it [the seller] has been put to in this behalf." Did the parties consider the brokers' commissions as among the expenses to which the seller had been put? And, if so, did they intend that the seller could appropriate the retained moneys to its own use and not be liable for the commissions of the brokers none of whom was a party to the written agreements for the sale of the property? The second extension agreement expressly confirmed as being in full force and effect (other than as thereby amended) the extension agreement of March 30, 1950, with its provision for the payment of brokers' commissions "at the date of settlement."

The learned court below appeared to place much emphasis on the facts that the agreement of January 4, 1950, which provided for the payment of the brokers' commissions "at the time of settlement" was the first writing of the principals to apportion the commission on the sale among the three brokers and that it is solely for that reason that the two plaintiffs are enabled to sue for their separate shares of the total commission. That is so, but it is equally true that the apportionment of the commission was confirmed through-

out as a continuing part of the agreement between the parties by the express ratification, contained in each of the extension agreements, of the unchanged provisions of the antecedent writings.

The ambiguity as to when the seller was to become liable for the payment of the brokers' commissions can be resolved only by determination of the attendant issue of fact and that, necessarily, calls for the interposition of a jury. As the case must go back for trial, it would be inappropriate to discuss further the facts tending to support one side or the other of the issue.

Judgment reversed with a procedendo.

Mr. Justice BELL dissents.