**SIM KAR LIGHTING FIXTURE CO., Plaintiff,**

v.

**GENLYTE, INC., and Richard Moushegian, Defendants.**

Civ. No. 91–4424 (WHW).

United States District Court, D. New Jersey.

Nov. 8, 1995.

Jeffrey A. Schwab, Michael Aschen, Tracy Grathwohl, Ableman, Frayne & Schwab, New York City, for Plaintiff.

John M. Calimafde, Brian P. Murphy, Ellen Plotkin, Hopgood, Calimafde, Kalil & Judlowe, New York City, for Defendant Genlyte, Inc.

Stephen Springer, Joseph L. Turchi, Kellie Ann Allen, LaBrum and Doak, Woodbury, NJ, for Defendant Richard Moushegian.

## OPINION

WALLS, District Judge.

This matter comes before the Court on plaintiff Sim Kar's motions for summary judgment and for dismissal of defendant Richard Moushegian's counterclaim. Also, defendant Genlyte moves to disqualify Sim Kar's trial counsel from trying the issue of inventorship.

## FACTS

Sim Kar filed suit against Genlyte on October 7, 1991 for patent infringement, claiming that Genlyte misappropriated the socket bar design for a florescent lighting fixture which had been patented by Charles Trowbridge and assigned to Sim Kar—U.S. patent No. 4,422,132 issued on December 20, 1983. During the course of the litigation, Richard Moushegian, an employee of Sim Kar, was deposed by Genlyte. At his deposition, in January 1993, Moushegian stated that he had invented the patented device at issue while employed by Sim Kar. On March 24, 1994, the Court entered a "Final Pretrial Stipulation and Order," previously submitted by Sim Kar and Genlyte in which Sim Kar asserted that Moushegian was a "coinventor of the '132 patent." Page 9, Para. 6, 7, & 8.

On June 16, 1995, Sim Kar then filed a Second Amended complaint seeking a Declaratory Judgment that Moushegian is not an inventor of the patent at issue. On July 6, 1995, Moushegian filed an Answer, Affirmative Defenses and Counterclaim in which he affirmatively denied the allegation that Trowbridge, owner of Sim Kar, was the sole inventor and alleged that he was the sole inventor, or at least a coinventor of the patent at issue. Moushegian Answer, Affirmative Defenses and Counterclaims, Para. 12–15 and Counterclaim Para. 94. In his An-

swer, Affirmative Defenses and Counterclaim, Moushegian accuses Sim Kar and specifically its counsel, Jeffrey A. Schwab and Michael Aschen of the law firm of Ableman, Frayne & Schwab, of harassment, misrepresentation, deception, suborning perjury and other wrongdoings in connection with their dealings with Moushegian to attempt to have him accept Sim Kar's contention regarding Trowbridge's inventorship. See Para. 113–116.

Moushegian has recently filed an Amended Answer, Affirmative Defenses and Counterclaim. Specifically, Moushegian seeks: 1) a declaratory judgment that he is the sole or a co-inventor and the sole or a co-owner of the '132 patent; 2) to judicially estop Sim Kar and its counsel from denying that Moushegian is an inventor of the '132 patent; 3) to recover damages for Sim Kar's unjust enrichment from exploiting the '132 patent invented and owned by Moushegian; 4) to recover damages for wrongful termination of his employment; 5) to recover damages against Sim Kar, Schwab, Aschen and the Schwab firm for conspiring to terminate his employment wrongfully; and 6) to recover damages for Sim Kar's wrongful termination effectuated through its officers, employees or agents.

Sim Kar now moves to have Moushegian's counterclaim dismissed.

Also, Genlyte seeks to have Ableman, Frayne & Schwab dismissed as counsel for Sim Kar, on the grounds that 1) Moushegian's Counterclaims allege wrongdoing on the part of Ableman, Frayne & Schwab thereby necessarily involving them in the action as witnesses, or 2) even if Moushegian's Counterclaims are dismissed, the conduct of Ableman, Frayne & Schwab with respect to Moushegian goes directly to the issue of who the actual inventor of the patent at issue is, which would also require members of the firm to testify at trial.

### DISCUSSION

### I. SIM KAR'S MOTION TO DISMISS MOUSHEGIAN'S COUNTERCLAIM STANDARDS

#### A. 12(b)(6)

Under 12(b)(6) a plaintiff's complaint must be dismissed for failure to state a claim if a defendant demonstrates "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All allegations set forth in the complaint must be accepted as true, *see Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972), and all reasonable inferences must be drawn in the plaintiff's favor. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). "Courts must be cautious in assessing motions to dismiss, particularly where granting such a motion would terminate the litigation before the parties have had their day in court." *Kiser v. General Electric Corp.*, 831 F.2d 423, 427 (3d Cir. 1987).

#### B. Summary Judgment

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of material fact is 'genuine' "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. Claim for Declaration of Inventorship

Sim Kar moves for summary judgment on Moushegian's claim for a declaration, pursuant to 35 U.S.C. § 256, that he was the sole or at least the co-inventor of the '132 patent.

35 U.S.C. § 256 provides:

> *Whenever through error* a person is named in an issued patent as the inventor, or through error *an inventor is not named in an issued patent and such error arose without any deceptive intention* on his part, the Commissioner may, on application of the parties and assignees, with proof of the facts and such other requirements may be imposed, issue a certificate correcting such error.

> *The error of omitting inventors or nam-*
> *ing persons who are not inventors shall*
> *not invalidate the patent* in which such
> error occurred if it can be corrected as
> provided in this section. The court before
> which such matter is called in question
> may order correction of the patent on no-
> tice and hearing of all parties concerned
> and the Commissioner shall issue a certifi-
> cate accordingly.

(emphasis added). Thus § 256 enables a patent to be amended when a good faith mistake as to the identity of the actual inventor was made by the party who obtained the patent when it applied for the patent; when there is no allegation of deceptive intent, or deceptive intent has not been proven, a patent can be amended and the validity of the patent will not be affected. Accordingly, Moushegian has filed an Amended Answer, Complaint and Counterclaim, in which he now contends that there was no deceptive intent on the part of Trowbridge when the patent was issued without Moushegian's name ·listed as an inventor.

 Sim Kar argues that Moushegian's claim for a Declaration of Inventorship should be dismissed because Moushegian can not, as a matter of law, prove that he is an inventor or the sole inventor of the '132 patent. A patent holder enjoys a presumption that the named persons were the inventors, and that presumption may be overcome only upon a showing to the contrary by clear and convincing evidence. *Congoleum Industries, Inc. v. Armstrong Cork Co.,* 339 F.Supp. 1036, *aff'd.* 510 F.2d 334 (3d Cir.), *cert. denied,* 421 U.S. 988, 95 S.Ct. 1991, 44 L.Ed.2d 478 (1972). In *Price v. Symsek,* 988 F.2d 1187, 1192–94 (Fed.Cir.1993), the Federal Circuit addressed at length, in the context of a claim of priority of ownership, the evidentiary burden of the clear and convincing standard when an individual seeks to overcome the presumption that the named inventor is not the sole and/or actual inventor. After reciting the history of the standard and the heavy presumption that the named inventor is the inventor, the Court concluded:

> the case law is unequivocal that an inven-
> tor's testimony respecting the facts sur-
> rounding a claim of derivation or priority
> of invention cannot, standing alone, rise to
> the level of clear and convincing proof.
> Throughout the history of the determina-
> tion of patent rights, oral testimony by an
> alleged inventor asserting priority over a
> patentee's rights is regarded with skepti-
> cism, and as a result, such inventor testi-
> mony must be supported by some type of
> corroborating evidence ... It is sufficient
> to note at this point that without some
> type of corroborating evidence, an alleged
> inventor's testimony cannot satisfy the
> "clear and convincing" standard.

*Id.* at 1194 (citations omitted). While the Court did not specifically address the clear and convincing standard in the context of a declaration of inventorship under § 256, the meaning of clear and convincing elaborated is nonetheless fully applicable to this case. In *Price* as well as the case at bar an alleged inventor is challenging the named inventor as not being the actual inventor of a patented device. The corroboration requirement thus serves two important purposes. First, it acts as a practicable method for maintaining the distinction between the clear and convincing and the preponderance of the evidence standards; second, it ensures that evidence other than the alleged inventor's necessarily self-interested testimony will be proffered before the inventorship and ownership rights of an individual who has been issued a patent are altered or eliminated altogether.

Moushegian has consistently maintained throughout this litigation that he is an inventor of the '132 patent. See Dep. R. Moushegian's, Jan. 28, 1993; Aff. R. Moushegian, para. 6. However, his sworn statement is insufficient by itself to survive this motion. Furthermore, he has submitted no notes, drawings or letters to bolster his oral testimony. Nevertheless, sufficient corroboration to withstand this motion exists—namely Sim Kar's statement in the Pretrial Order that Moushegian is an inventor of the '132 patent. While, as will be discussed below, the Court will not judicially estop Sim Kar from making a contrary assertion, this statement is still evidence that the Court at this point and the trier of fact eventually may rely upon.

Because Moushegian has met his burden by producing sufficient evidence, Sim Kar's motion for summary judgment with respect to Moushegian's claim of inventorship is denied.

### *Laches*

■ Sim Kar seeks to dismiss Moushegian's claim of inventorship on the grounds that it is time barred. The patent was issued fourteen (14) years ago and, Sim Kar claims, Moushegian must have had actual or constructive knowledge of the existence of the patent for most of that time. Indeed, Sim Kar points to a letter written by Moushegian in 1984 directing Sim Kar employees to change the patent number on certain devices to reflect the fact that the patent in dispute in this case had been issued by the Patent Office. Moushegian contends that he did not learn that his device had been patented until Sim Kar sued Genlyte, in 1991.

In *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1575 (Fed.Cir.1994), the Federal Circuit held that 35 U.S.C. § 256 does not require "that an omitted inventor of an issued patent must diligently bring a lawsuit to correct inventorship or be forever barred from doing so." § 256 "thus serves the public policy of preserving property rights from avoidable forfeiture." *Id.* at 1573. Moreover, "forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto." *Id.* (quoting *Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 33, 11 S.Ct. 691, 694, 35 L.Ed. 332 (1891)).

■ For Sim Kar to establish a defense of laches, it must show "1) unreasonable and inexcusable delay in filing suit and 2) material prejudice resulting from the delay. Laches is presumed in patent infringement cases if the delay is longer than six years ... Laches bars recovery of damages for any infringement occurring before suit was filed." *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1461 (Fed.Cir.1990).

On one hand, Moushegian has allegedly delayed asserting his claim for 10 years, which would place the burden on him to prove that delay was reasonable and that Sim Kar was not materially prejudiced thereby; on the other hand, the Court must give weight to the presumption against finding that a claim under § 256 has been waived. Moushegian has made a colorable showing that his delay was not "unreasonable and inexcusable"—he alleges that he was not aware that a patent had been issued and is generally unfamiliar with the patent process. Moreover, there is simply no evidence of any material prejudice to Sim Kar. If anything, Moushegian's silence has enabled Sim Kar to reap profits for a device it may not have lawfully owned. These considerations, especially when viewed against the backdrop of the presumption against forfeitures under § 256, are sufficient to withstand a defense of laches.

Sim Kar's summary judgment motion with respect to Moushegian's claim for a declaratory judgement pursuant to 35 U.S.C. § 256 that he is the sole or a co-inventor of the patent is denied.

### B. Claim for Declaration of Ownership Ownership

■ Moushegian's counterclaim against Sim Kar also includes a request for a declaration that he is an owner of the '132 patent pursuant to 35 U.S.C. § 256. Inventorship and ownership are distinct issues—the inventor and the owner of a patent may not be the same person. Yet, "absent some effective transfer or obligation to assign the patent rights, the original inventor owns the right to obtain the patent." *University Patents Inc. v. Kligman*, 762 F.Supp. 1212, 1218–19 (E.D.Pa.1991). The issues of ownership and inventorship are further complicated when they arise in the employment context:

The starting place is that an individual owns the patent rights in subject matter of which he or she is a sole or joint inventor even though that subject matter was conceived and/or reduced to practice during the course of employment. To this rule there are two exceptions and one limitation. First, an employer owns employee inventions if the employee is a party to an express contract to that effect. Second, an employer owns employee inventions if the

employee was specifically hired to exercise his or her "inventive faculties." Third, the employer may have non-exclusive and non-transferable royalty-free license ("shop-right") to use the employer's patented invention.

D. Chisum, Patents § 22.03 (1995).

■ Here there is no express assignment of ownership rights between Moushegian and Sim Kar.[1] Sim Kar, relying on the second exception, claims that it is the sole owner, even if Moushegian is an inventor, because Moushegian invented the device in question while an employee and under the direction of Sim Kar. Even though this seems to be true, it does not end the inquiry. Sim Kar's theory of ownership is basically that an implied contract that Moushegian would assign his rights, either in this or in all inventions he created, had been entered into between Moushegian and Sim Kar. *See, e.g., University Patents, Inc. v. Kligman,* 762 F.Supp. at 1219 ("Since contracts to assign patent rights do not have a statutory basis, but rather have a basis in common law or in equity, they need not be in writing and they may be implied as well as express"). The question of whether such an implied contract exists is governed by state law, *Harsco Corp. v. Zlot-nicki,* 779 F.2d 906 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986), and both parties concede that Pennsylvania law applies to this case.

■ As a general matter, courts have been reluctant to imply contracts to assign patent rights for fear of discouraging invention, and Pennsylvania Courts have squarely followed this trend,[2] *Kligman,* 762 F.Supp. at 1221. In *Aetna–Standard Engineering Co. v. Rowland,* 343 Pa.Super. 64, 493 A.2d 1375 (Sup.Ct.1985), for example, the Court found that no implied agreement existed where the employee was hired as a general staff engi-neer, was not recruited specifically to design the invention at issue, and received no special compensation for designing the invention. As *Aetna* demonstrates, absent an express agreement executed by an employee to assign the rights either of her specific inventions or of all of her inventions to her employer, only in the rare case will an employer prevail in an ownership dispute. The questions before the Court, therefore, are: what was the nature of Moushegian's employment, and was an implied contract to assign thereby created?

In Moushegian's deposition taken on Jan. 28, 1993, the following was recorded:

Q: How did you come to make that [the '132 patent] design, why change from the first design?

A: Well, I was asked by Mr. Trowbridge [President and Owner of Sim Kar] to see what we could do to solve some of the production problems we had with this design..

Q: Well, how did you come to make the design that's shown in this 4,422,132 patent?

A: With the approval of Mr. Trowbridge. He was my boss, I worked for him.

According to Moushegian, he undertook the design for the '132 patent at the request and under the supervision of his employer, Mr. Trowbridge and Sim Kar. Furthermore, he was hired in 1978 as a "design engineer." What this entails is not clear from the pleadings and exhibits submitted, but it suggests that he was employed, at least in part, for his inventive faculties.

However, there is no evidence that Moushegian received separate consideration in return for his alleged role in the design of the '132 patent. Moreover, Moushegian now

1. While Moushegian did recently sign an agreement assigning his rights in the '132 patent to Sim Kar, Moushegian claims that the agreement is void because he agreed to Sim Kar's terms under duress. Sim Kar has not sought to enforce this agreement.

2. It has not been settled under Pennsylvania law whether employee handbooks can create contracts which supersede the employment at will doctrine for purposes of wrongful termination.

*See Darlington v. General Electric,* 350 Pa.Super 183, 504 A.2d 306 (1986); *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super 199, 511 A.2d 830 (1986); it is even less clear whether employee handbooks can create express or implied contracts to assign patent rights. This Court need not address this issue as neither party has claimed that a handbook exists which creates a binding obligation.

alleges, in an affidavit, that *he* had "conceived and developed" the '132 patent, and "mainly on [his] own time." See Aff. R. Moushegian, para. 11. Although the Court views this new assertion quite skeptically,[3] it is not permitted to weigh credibility on a summary judgment motion. Thus, because of artful pleading, the strong presumption against implied contracts to assign patent rights, and the present circumstance that the precise nature of Moushegian's employment is unclear, a material issue of fact exists concerning Moushegian's ownership rights in the '132 patent. Sim Kar's motion with respect to this claim is denied.

## C. Claim for Unjust Enrichment
### Unjust Enrichment

Moushegian seeks damages for Sim Kar's alleged unjust enrichment from wrongfully securing the profits for the device he allegedly invented. Sim Kar moves to dismiss this claim pursuant to 12(b)(6).

■■■ Under Pennsylvania law,[4] an action for unjust enrichment will lie where the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987). As to most of the time since the patent was issued, Moushegian has produced no evidence of wrongful conduct on the part of Sim Kar. Significantly, Moushegian does not plead that Sim Kar failed to include his name on the patent in order to deceive him, nor does he come forward with any evidence that Sim Kar engaged in any wrongdoing, or even that it knew but failed to acknowledge

Moushegian's alleged contribution to the '132 patent—until Sim Kar brought suit against Genlyte in 1991. Thus by Moushegian's own admission there could not be any *unjust* enrichment until 1991.

■■■ Moushegian does allege that since 1991 Sim Kar has been made aware of his alleged role in the design of the device at issue, and that Sim Kar and the Schwab firm pressured him to commit perjury and assign his rights in the patent. These allegations state a claim for unjust enrichment.

The Court grants Sim Kar's motion to dismiss the unjust enrichment claim until 1991. However, Moushegian states a valid claim for damages for unjust enrichment based on Sim Kar's conduct thereafter. As to this time period, Sim Kar's motion is denied.

### Statute of Limitations

■■■ It is clear that a claimant who prays for damages based on unjust enrichment is seeking an equitable remedy. *See Peterson v. Crown Financial Corp.*, 661 F.2d 287, 295 (3d Cir.1981). Sim Kar argues that Moushegian's unjust enrichment claim is time barred under the four year statute of limitations for indemnity actions under Pennsylvania law. 42 Pa.C.S.A. § 5525(4). However, the issue of the applicable limitations period for this type of claim has been a source of confusion for the courts. Some courts have determined that unjust enrichment claims are quasi-contractual and therefore the four year limitations period for certain contract actions applies. *Chanoff v. Greenberg*, 1988 WL 132185, *3 (E.D.Pa. 1988). Other courts have concluded that the six year statute of limitations period which

---

**3.** Moushegian's new claim that *he* conceived the design for the '132 patent seems to contradict his deposition testimony—testimony taken over two years ago, long before he hired a lawyer and made the claims asserted in this suit. Moushegian and/or his lawyers have been quite crafty and have continually engaged in "artful" pleading to ensure that his claims state valid legal causes of action. No doubt, Moushegian will argue that his affidavit does not contradict his deposition testimony because the latter demonstrates that he was *directed* by Sim Kar to work on the design; he nonetheless *conceived* the design that became the '132 patent. Similarly, one could

view his vague reference in the affidavit to the fact that he completed the '132 patent "on his own time" as designed simply to create an issue of fact that Sim Kar is not actually the owner of the patent. One could also view cynically his change of position from his Answer to his Amended Answer that Sim Kar had no deceptive intent at the time his name was left off the patent; this "alteration" enables Moushegian to seek amendment of the patent more easily.

**4.** Both parties agree that Pennsylvania law governs this dispute.

apply to different contract actions obtains. *See, e.g., U.S. v. Kensington Hospital,* 1993 WL 21446, \*14 (E.D.Pa.1993). Yet other courts have determined that no statute of limitations applies; rather, because unjust enrichment sounds in equity, an argument that a party has delayed asserting its claim must be couched within the doctrine of laches. *Bridgestone/Firestone, Inc. v. Carr's Tire Service, Inc.,* 1992 WL 365512, \*15 (E.D.Pa.1992). To this Court, the *Bridgestone* route is appropriate; Sim Kar's argument will be analyzed as a laches defense.

 "Laches bars an equitable cause of action only if two elements are present: (1) inexcusable delay in bringing suit, and (2) prejudice resulting to the defendant from such delay." *Id.* The Court has already held that Moushegian fails to state a claim for unjust enrichment until 1991/1992 when Sim Kar actually knew or should have become aware of Moushegian's alleged role in the design of the lighting device patented by Sim Kar—from that time to the present, Moushegian does allege a proper claim. Hence his only surviving claim for unjust enrichment could not have accrued until late 1991 or early 1992. Moushegian was named as a defendant in this action on June 16, 1995, and asserted the counterclaim at issue on July 6, 1995. At most he has waited three and a half years to bring this claim—not an unreasonable time. Additionally, Moushegian alleges that he did not take any action— and indeed was pressured to relinquish any rights he had in the patent—for fear of being fired by Sim Kar. Thus his claim for unjust enrichment and his delay in asserting that claim are inextricably intertwined. As alleged by Moushegian, Sim Kar was able to enrich itself unjustly *by* preventing him from securing, through the courts or otherwise, the profits of his device; the nature of these allegations preclude a finding of "inexcusable delay."

Sim Kar's motion to dismiss Moushegian's unjust enrichment claim pursuant to the doctrine of laches is denied.

### D. Claim for Judicial Estoppel

 In the "Contested Facts" section of the Final Pretrial Stipulation and Order, Sim Kar asserted: "Richard Moushegian is a co-inventor of the '132 patent." Moushegian therefore seeks to estop Sim Kar from claiming that Moushegian is not an inventor of the '132 patent. Sim Kar moves pursuant to Fed.R.Civ.P. 12(b)(6) for dismissal of this claim.

 The doctrine of judicial estoppel precludes a party from assuming a position in a legal proceeding that contradicts, or is inconsistent with, a previously asserted position. See, 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4477 (1981). According to the Court of Appeals for the Third Circuit, the doctrine "looks to the connection between the litigant and the judicial system, preserving the integrity of the courts by preventing litigants from 'playing fast and loose with the courts.' " *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107 (3d Cir.1992). It applies when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum for suitors seeking justice." *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir.1953).

 Judicial estoppel is appropriate where contradictory positions by a litigant threaten the integrity of the court. Here, the Court does not believe that its integrity has been threatened by Sim Kar's change of position. In this era of liberal notice pleading, only when a party has obtained a palpable and unfair advantage from a position previously taken should that party be judicially estopped from changing its position. Here, Moushegian has not demonstrated nor is the Court convinced that Sim Kar has obtained an unfair advantage from asserting in the Pretrial Stipulation and Order that Moushegian was an inventor.

Sim Kar's motion to dismiss Moushegian's claim for judicial estoppel is granted.

### E. Claim for Wrongful Separation

Moushegian alleges that he was wrongfully separated from his employment because he refused to perjure himself. Specifically, he contends that Sim Kar pressured him to sign documents regarding its suit with Genlyte that contained materially false statements; and, moreover, his refusal to perjure himself

was the reason for his termination. Sim Kar seeks dismissal under 12(b)(6) on two grounds: 1) Moushegian has not been terminated, rather he has been put on a "leave of absence"; and 2) Pennsylvania law does not recognize Moushegian's claim.

Sim Kar's argument that Moushegian has not been "terminated" and therefore has no wrongful termination claim is dubious. Moushegian has been placed on an *unpaid* leave of absence, with benefits, to be reviewed every month. On three separate occasions his status has been reviewed and he has been kept on "leave of absence" status. No cases directly address the definition of "termination" pursuant to the common law cause of action for wrongful termination. Moushegian points to several cases, which are at best analogous, that bear on what it means to be terminated. *See, e.g., Torsky v. Commonwealth,* 81 Pa.Cmwlth. 642, 474 A.2d 1207, 1209 (1984) (claim for social security); *Bonham v. Dresser Industries, Inc.,* 424 F.Supp. 891, 896 (W.D.Pa.1976), *modified on other grounds,* 569 F.2d 187 (3d Cir.1978) ("To discharge an employee is to remove him temporarily or permanently from employment"). As a matter of common sense, it seems likely that Moushegian is not going to be rehired. Furthermore, in the unlikely event that he were rehired, his placement on this ambiguous unpaid "leave of absence," if it were done wrongfully, should entitle Moushegian to damages for at least that period. Although there may be no binding cases on point, a discharge from employment probably does not have to be permanent for purposes of a wrongful separation claim; if it did, employers could easily stave off suits by placing employees on "unpaid leaves."

Sim Kar's second contention, that Pennsylvania law does not provide for a cause of action for wrongful separation based on Moushegian's allegations, has also propelled this case into an area of law where there is no clear precedent. Pennsylvania law strongly favors at-will employment and allows only narrow exceptions to that presumption. *Burkholder v. Hutchison,* 403 Pa.Super 498, 589 A.2d 721 (1991). Pennsylvania does recognize a cause of action for wrongful termination, but "the employee must show a violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social rights, duties and responsibilities.'" *Turner v. Letterkenny Federal Credit Union,* 351 Pa.Super 51, 505 A.2d 259 (1985) (quoting *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 899 (3d Cir.1983).). The Pennsylvania Supreme Court has held that firing an employee for serving jury duty, *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super 28, 386 A.2d 119 (1978), or because an employee had formerly been convicted of a crime and then subsequently pardoned, *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980), or for reporting violations of federal regulations to the Nuclear Regulatory Commission, all violate public policy. *Field v. Philadelphia Electric Co.,* 388 Pa.Super 400, 565 A.2d 1170 (1989).

The issue presented herein is whether terminating an employee for allegedly refusing to perjure himself falls within this public policy exception to the at-will employment doctrine of Pennsylvania. Pennsylvania law categorizes the acts of perjury and subornation of perjury as third degree felonies. 18 Pa.C.S. § 4902, 4909. Just as an employee who is fired for serving jury duty has an action for wrongful discharge, so too should an employee who is fired for refusing to perjure himself. Both threaten the integrity of the courts and obstruct the fair administration of justice.

Whether or not Moushegian can actually prove his allegations at trial, he has, under Pennsylvania law, stated a claim upon which relief may be granted. For this reason Sim Kar's motion to dismiss Moushegian's cause of action for wrongful separation is denied.

### F. Claim for a Civil Conspiracy

Moushegian seeks damages for a conspiracy allegedly entered into between Sim Kar and its attorneys, the Schwab firm, to pressure Moushegian into perjuring himself. Sim Kar moves to dismiss this cause of action on the grounds that Sim Kar and its counsel comprise a single entity, and there must be two parties for a conspiracy.

██ Pennsylvania does recognize a cause of action for a conspiracy. "To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466 (1979). However, an action will lie only where the *sole* purpose of the conspiracy is to cause harm to the party who claims to be injured. *Id.* ("Proof of malice, i.e., an intent to injure, is essential in proof of conspiracy ... There are no facts of record which indicate that [appellee] acted solely to injury appellants"). Here Moushegian specifically argues—in order to prove that Sim Kar and the Schwab firm are two different parties capable of conspiring—that the Schwab firm conspired with Sim Kar to pressure Moushegian to perjure himself so Sim Kar's case against Genlyte would be successful and the Schwab firm could secure higher fees. Thus, by Moushegian's own admission, the Schwab firm's sole motivation could not have been to harm Moushegian. Indeed, no where in his Amended Answer, Complaint and Counterclaim does he plead that Sim Kar and its counsel solely intended to harm him—clearly the greatest, if not the only motivation of their actions was to win the suit against Genlyte.

Because Moushegian has not alleged that Sim Kar and the Schwab firm solely intended to harm Moushegian when it purportedly pressured him to commit perjury, Sim Kar's motion to dismiss Moushegian's claim of a civil conspiracy pursuant to 12(b)(6) is granted.

## II. GENLYTE'S MOTION TO DISQUALIFY SIM KAR'S COUNSEL

██ United States District Courts for the District of New Jersey follow the Rules of Professional Conduct ("RPC") promulgated by the New Jersey Supreme Court, whose interpretations of the RPC are controlling. See General Rule 6A, Comment 1. If the New Jersey Supreme Court has not rendered a definitive interpretation of a particular rule "the federal Court will proceed to reach its own conclusion as to the appropriate application of the Rules of Professional Conduct." *Id.*

New Jersey's Rule of Professional Conduct 3.7 ("RPC 3.7") provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Genlyte contends that Aschen and Schwab are necessary witnesses concerning the contested issue of inventorship. As discussed above, 35 U.S.C. § 256 permits a patent holder to amend a patent, without affecting the patent's validity, where the patent does not correctly state who the inventor is. However, when the patent does not accurately name the inventor because of intentional deception by the patent holder, the patent will be deemed invalid. One of Genlyte's defenses to patent infringement is that Moushegian was an inventor, and that the failure to include Moushegian's name on the patent was a result of intentional deception thereby rendering the patent invalid.

This defense is untenable, and therefore Schwab and Aschen are not necessary witnesses on a contested issue. First, Genlyte admits that the patent could be amended with no affect on the patent's validity if "Moushegian and plaintiff [ ] state under oath that the nonjoinder or misjoinder was inadvertent and that such error arose without any deceptive intent." Brief for Defendant, Genlyte in Support of Defendant's Motion to Disqualify Plaintiff's Counsel, p. 15. Moushegian has already made this concession. Moushegian, in his Amended Answer, Complaint and Counterclaim "clarified that he was not claiming any fraud or intentional deceit by Sim Kar in filing the patent application for the '132 Patent in December, 1981." Brief for Counterclaim–Plaintiff, R. Moushegian in Opposition to Plaintiff's Motion to Dismiss Moushegian's Counterclaim, p. 3. Charles Trowbridge, the named inventor and former president of Sim Kar, can not

testify because he is dead. Thus there is simply no evidence that Moushegian was not named as an inventor because of Sim Kar's deceptive intent. Because the issue of inventorship is not germane to the dispute between Sim Kar and Genlyte the Schwab firm does not need to be disqualified.

Importantly, the deceptive intent issue concerns the intent of Sim Kar at the time the patent was issued. The Schwab firm's conduct fourteen years after the '132 patent was issued has no bearing on the inventorship question.

Genlyte's motion to dismiss Sim Kar's counsel is denied.

### CONCLUSION

ORDERED that the motion of plaintiff Sim Kar for summary judgment with respect to defendant Richard Moushegian's claim for a declaration of inventorship and ownership is hereby **denied;**

ORDERED that the motion of plaintiff Sim Kar for dismissal of Richard Moushegian's claim for unjust enrichment is hereby **granted** as to profits secured before 1992; Sim Kar's motion for dismissal of Richard Moushegian's claim for unjust enrichment is hereby **denied** at to profits secured after 1992;

ORDERED that the motion of plaintiff Sim Kar for dismissal of Richard Moushegian's claim for judicial estoppel is hereby **granted;**

ORDERED that the motion of plaintiff Sim Kar for dismissal of Richard Moushegian's claim for wrongful separation is hereby **denied;**

ORDERED that the motion of plaintiff Sim Kar for dismissal of Richard Moushegian's claim for a civil conspiracy is hereby **granted;**

ORDERED that the motion of defendant Genlyte to disqualify Sim Kar's counsel from trying the issue of inventorship is hereby **denied.**